477 So.2d 237 (1985)
CLINTON MUNICIPAL SEPARATE SCHOOL DISTRICT
v.
Ken Byrd, Individually, as Father and Adult Next Friend of Tina Byrd; Mary Ann Moore, Individually, as Mother and Adult Next Friend of Lisa Diane Moore.
No. 56070.
Supreme Court of Mississippi.
August 14, 1985.
Rehearing Denied October 2, 1985.
*238 W. David Watkins, John M. Loper, Brunini, Grantham, Grower & Hewes, Jackson, for appellant.
T. Mark Sledge, Robert C. Grenfell, Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the court:

I.
This appeal presents important questions regarding the authority of the public school officials of this state in student discipline matters. By virtue of legislative enactments, school administrators have been vested with substantial discretionary authority respecting such matters, although none that may not be exercised consistent with federal and state constitutions.
Today's case involves two high school students who defaced school property by painting on it. The school board determined that the students should be suspended for a semester. Upon application of the students and their parents, the Chancery Court enjoined enforcement of the suspension. For the reasons explained below, we hold that under the facts of this case the punishments sought to be imposed are within the authority vested by law in the school board. We reverse and render.

II.
At 3:30 a.m. on the morning of Monday, September 3, 1984, Tina Byrd and Lisa Moore were discovered by the police on the grounds of Clinton High School in Clinton, Mississippi, thus interrupting the painting of a three foot high "1" on a brick wall adjacent to the flag pole. At the time the two girls were enrolled in the eleventh grade in Clinton High School which is owned, operated and maintained by the Clinton Municipal Separate School District, Defendant below and Appellant here (sometimes hereinafter "the school board"). Tina Byrd and her parents and Lisa Moore and her parents are all resident citizens of Clinton, Mississippi, were Plaintiffs below and are Appellees here.
Lisa and Tina have chosen not to supply additional information concerning the painting incident, although it is apparent they were not acting alone. The record leaves us in the dark regarding the object of the girls' prank  proclaiming "We're No. 1", making prominent the girls' graduation class year, or surely some similarly sophomoric (as to means) display of school spirit.
On the morning of September 4, 1984, Dr. Ramey Beavers, principal of Clinton High School, met individually with the girls. He explained to them the section of the student handbook stating the school policy regarding defacement of buildings and other school property. The school policy there published mandates suspension for the remainder of the current school semester. Both girls signed a discipline report. Their parents were contacted and informed of the school's proposed disciplinary action and of the students' rights of appeal within the school system.
The girls and their parents immediately sought and obtained from the Chancery Court of Hinds County, Mississippi, a temporary restraining order allowing the girls to continue attending school until a hearing could be heard before the school board. See Rule 65(b), Miss.R.Civ.P. Clinton Municipal Separate School District sought to dissolve the temporary restraining order but were unsuccessful.
On September 11, 1984, the school board heard the appeals of Tina and Lisa. Both parents and attorneys were permitted to address the board on behalf of the girls. *239 The board voted unanimously to uphold the principal's recommendation that the students be suspended for the remainder of the then current school semester in accordance with the school policy.
On September 14, 1984, the parties were back in chancery court as the Byrds and the Moores pressed their application that the temporary restraining order be made a permanent injunction. Following plenary hearing on the merits, the Court on October 10, 1984, entered final judgment in favor of the Byrds and Moores enjoining the school board from suspending the two girls but affirming the right of the board to impose "any form of punishment which may fit the offense which was committed by these students". This appeal has followed.

III.
The parties have largely agreed both in their briefs and at oral argument regarding the content of the dispositive rules of law. School authorities have substantial but not unlimited discretion in student disciplinary matters. The facts likewise are essentially undisputed. These two students were admittedly involved in painting a large "1" on the brick wall of the school building. The parties even agree that this conduct violated a school rule the primary portion of which is valid and that some punishment was and is appropriate.
The parties differ regarding the permissible extent of such punishment. The Byrds and the Moores argue that suspension for a full semester is impermissibly severe in that it is a punishment substantially disproportionate to the "crime." The Chancery Court accepted this argument. The school board, on the other hand, argues that the punishment selected is one which under these facts it has authority to inflict without judicial interference. The school board's view is the legally correct one.
The Mississippi legislature has provided the governing bodies of local schools with substantial authority to regulate the activities of students and punish students for violation of school policies. Miss. Code Ann. § 37-7-301 (Supp. 1984) provides:
Powers and duties of boards of trustees.
The board of trustees of school districts shall have the following powers, authority and duties in addition to all others imposed or granted by law, to-wit:
* * * * * *
(c) To be the custodians of the school property and to manage, control, and care for same, both during the school term and during vacation;
* * * * * *
(e) To suspend or expel a pupil for misconduct in the school, upon school buses, on the road to and from school, during recess or upon the school playgrounds;
* * * * * *
(1) To prescribe and enforce rules and regulations not inconsistent with law or with the regulations of the state board of education for their own government and for a government of the schools... .
Our law further provides:
Suspension of pupil.
The superintendent of a school district and the principal of a school shall have the power to suspend a pupil for good cause or for any reason for which such pupil might be suspended, dismissed or expelled by the board of trustees. However, such action of the superintendent or principal shall be subject to review by and the approval or disapproval of the board of trustees.
Miss. Code Ann. § 37-9-71 (1972).
The legislature has proscribed the limits of punishment for destruction or defacing of school property:
Damaging school property.
If any pupil shall willfully destroy, cut, deface, damage or injure any school building, equipment, or other school property he shall be liable to suspension or expulsion and his parents or person *240 or persons in loco parentis shall be liable for all damages (emphasis supplied).
Miss. Code Ann. § 37-11-19 (1972).
Pursuant thereto, the school board has adopted a policy which, in pertinent part, reads as follows:
DESTRUCTION/DEFACEMENT OF SCHOOL PROPERTY
Any student in grade seven (7) or above who vandalizes, destroys, or defaces school property with paint or otherwise, or who floods a school building shall be suspended for the remainder of the then current semester and shall be readmitted at the beginning of the next semester only after the student and/or his/her parent/guardian provides an assurance in writing that such behavior will not be repeated.
This rule and the punishment it contemplates are within the outer limits of the authority vested in the district by the statutes set forth. The exercise of that authority may be judicially interdicted only if it be found to infringe upon some right vested in and secured to these girls by the constitutions of the United States or this state.

IV.
While school boards have substantial disciplinary authority, that authority is legal in its derivation and its exercise is subject ultimately to the Constitution of the United States:
The Fourteenth Amendment, as now applied to the states, protects the citizens against the state itself and all of its creatures  boards of education not excepted. These have  important, delicate, and highly discretionary functions but none that they may not perform within the limits of the Bill of Rights.
West Virginia State Board of Education v. Barnette, 319 U.S. 624, 637, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943). See also, Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 507, 89 S.Ct. 733, 737, 21 L.Ed.2d 731, 738 (1969).
A student's interest in obtaining an education has been given substantive and procedural due process protection. See, e.g., Plyler v. Doe, 457 U.S. 202, 217, 102 S.Ct. 2382, 2395, 72 L.Ed.2d 786 (1982); Bolling v. Sharpe, 347 U.S. 497, 500, 74 S.Ct. 693, 695, 98 L.Ed. 884 (1954); Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 400, 43 S.Ct. 625, 627, 67 L.Ed. 1042 (1923); 46 Miss.L.J., at 1043. This protected interest, however, is largely a state created interest, for the provision of free public education has been accepted as a responsibility of this state (as well as the other 49 states).
Our legislature has declared a part of the public policy of this state the provision of "quality education for all school age children in the state", Miss. Code Ann. § 37-1-2(f) (Supp. 1984), this out of recognition of the effect of education "upon the social, cultural and economic enhancement of the people of Mississippi." Miss. Code Ann. § 37-1-2 (Supp. 1984). Thus while there may be no federally created fundamental right to education, as the school board argues, relying upon San Antonio Independent School District v. Rogriguez, 411 U.S. 1, 29-39, 93 S.Ct. 1278, 1294-1300, 36 L.Ed.2d 16, 40-47 (1973), the right to a minimally adequate public education created and entailed by the laws of this state is one we can only label fundamental. As such this right, to the extent our law vests it in the young citizens of this state, enjoys the full substantive and procedural protections of the due process clause of the Constitution of the State of Mississippi, whatever construction may be given the Constitution of the United States.
As a matter of state substantive due process, a school board's disciplinary rule or scheme is constitutionally enforceable where fairly viewed it furthers a substantial legitimate interest of the school district. The authority vested in school boards consistent with this constitutional limitation includes substantial discretion with respect to the administration of punishments to students who violate school *241 rules. This Court has heretofore determined that it will not interfere with school boards in the exercise of such discretion so long as constitutional parameters are not transgressed. See Shows v. Freeman, 230 So.2d 63, 64 (Miss. 1969) and McLeod v. State Ex Rel Colmer, 154 Miss. 468, 474, 122 So. 737, 738 (1929).
There is no question that mandatory school disciplinary rules are not unconstitutional simply because they are mandatory. However, a mandatory disciplinary rule may be unconstitutional if it may not be said to further a substantial legitimate interest of the school district. Cf. Mitchell v. Board of Trustees of Oxford, Municipal Separate School District, 625 F.2d 660 (5th Cir.1980). The rule challenged in Mitchell concerned a mandatory expulsion penalty for any student who brought to school a knife or any other object which could be classified as a weapon. The court there noted that violence in the school was a legitimate concern of the school board and thus the Board was justified in responding to that problem by making a strict rule "and punishing violations with one of the most severe weapons in its arsenal of punishment." (emphasis supplied) Because the rule and the punishment for its violation were clearly rationally related to the goal of providing a safe environment in which children can learn, it comported with the requirements of federal substantive due process. Mitchell, at 665.
Other cases involving challenges to mandatory expulsion rules are Fisher v. Burk Burnett Independent School District, 419 F. Supp. 1200 (N.D.Tex. 1976), and Caldwell v. Cannady, 340 F. Supp. 835 (N.D.Tex. 1972). Both of these cases upheld in the face of federal constitutional challenges mandatory expulsion rules for students who violated school drug regulations. Again in these cases the seriousness of the problem of drugs in the schools was held to be sufficient grounds to justify the penalty of mandatory expulsion of students who violated the rule.
The rule at issue here and the punishment proposed to be inflicted fairly viewed further substantial legitimate interests of the school district. In Section III we held this rule and punishment authorized by our statutory law. We here find that it passes constitutional muster, and the chancellor erred when he held otherwise. Dissatisfactions with such rules must be addressed to the school board, not the courts of this state. We borrow what the Fifth Circuit has said in Mitchell:
This court has consistently stated that school disciplinary matters are best resolved in the local community and within the school system. [Citations omitted] If the plaintiffs believe the rule mandating expulsion ... is too harsh, their remedy is to persuade the School Board to change it... .
 Mitchell at 665.
A word should be added regarding the challenge made here to the "mandatory" nature of the rule. That a school rule may be worded in mandatory language does not deprive school boards and their subordinates of the authority to administer the rule with flexibility and leniency. The school board may choose not to exercise its power of leniency. In doing so, however, it may not hide behind the notion that the law prohibits leniency for there is no such law. Individualized punishment by reference to all relevant facts and circumstances regarding the offense and the offender is a hallmark of our criminal justice system. See, e.g., Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973, 989 (1978). School officials have no less authority to make such a part of their student disciplinary systems. Only where the board acts in an unlawfully arbitrary and discriminatory manner may the judiciary interfere  and there is nothing in the record before us that would suggest such unlawful discrimination even if the board were to determine that these girls have been punished enough and pretermit infliction of any further sanctions.

V.
In this and many other contexts, we often say that the law vests in the school *242 board or other public body authority with respect to certain matters. How, when and where that authority is exercised is said to be "discretionary" within the particular board or agency. We say that courts may interfere only where legally permissible limits are exceeded or where there has been a gross abuse of discretion. In the vast majority of reported cases such words are largely meaningless for it is apparent from the opinions we release that we agree (or at least do not disagree) with the manner in which the discretion has been exercised. Life vests in the concept of discretionary authority only by virtue of cases where we disagree with the particular board or agency and what it has done or purports to do, where if we were the decision makers we would do otherwise, but where we nevertheless stay our hands and recognize that the authority to determine the matter has by law been committed to the particular board or agency and not this Court. This is such a case.
We wish to make it clear that we do not today hold that the law requires the suspension of these two young girls for a semester. Rather, the law commits this entire matter to the authority and discretion of the school board. What the board has done and proposes to do here violates no rule of law which has been called to our attention, nor any right secured to these girls by any such rule.
We give emphasis to our holding by noting that there are many punishments which (perhaps in combination) seem to us more appropriate than that which the school board has determined. Obviously, the girls should be required to clean up the wall and pay any attendant expenses. Depriving them of certain student privileges, such as eligibility for exemption from course examinations, or prohibition from participation in extra-curricular activities, such as serving as cheerleader, seems reasonable. "Staying in" after school appears a viable alternative. Or perhaps special "extra" learning tasks might be assigned, such as reading and memorizing selections by Shakespeare. The Merchant of Venice would not be inappropriate, where these two girls could learn from Portia that "the quality of mercy is not strain'd" and that "earthly power doth ... show likest God's when mercy seasons justice", Act IV, Sc. I, lines 184, 196-97  and teach this to their principal, their superintendent, their school board, and their community.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.