500 So.2d 455 (1986)
WARREN COUNTY BOARD OF EDUCATION
v.
Alexandra Renee WILKINSON, a Minor, By and Through Her Next Friend and Father, John C. WILKINSON.
No. 56035.
Supreme Court of Mississippi.
December 10, 1986.
*456 M. James Chaney, Jr., Teller, Chaney & Rector, Vicksburg, for appellant.
Mark W. Prewitt, Prewitt & Johnson, Vicksburg, for appellee.
Before ROY NOBLE LEE, P.J., and ANDERSON and GRIFFIN, JJ.
GRIFFIN, Justice, for the Court:
"But we know that the law is good, if a man use it lawfully."[1]
This case has as its genesis the loss of all credit for a semester as a result of a minor indiscretion by a 16-year-old sophomore attending Warren Central Senior High School. The conduct of the school officials epitomizes the misuse of good law. What we have to say in this case shall not be interpreted as condemnation of any individual, but is supplied as a guide in future disciplinary actions taken by school boards.
On June 1, 1984, the appellee, Alexandra Renee Wilkinson, and a friend and schoolmate, after her parents had gone to work, drank two or three sips of her daddy's beer at her residence and then went to school. This was the last day of school. Renee was exempt from examinations because of her perfect attendance, deportment and good grades. Nevertheless, she attended school and after lunch, some time after 1:00 but before 1:30, the school principal removed her from a class and extracted from her an admission that she and her friend had drunk beer at her home before coming to school. Other teachers had confronted the classmate and received a statement concerning the consumption of the beer. There was no odor of beer on Renee's breath or any evidence of misconduct, and the principal, when asked if during his interrogation of her, her shirt was not fluttering from her heartbeat, stated that she was nervous.
Mr. and Mrs. Wilkinson received the following letter from the principal:
Renee came to school on Friday, June 1, 1984, after drinking beer with Linda Horan at your house before school. According to our handbook she will have to appear before the Warren County Board of Education before returning to Warren Central. The Board will meet at 4:00 P.M. on Thursday, June 14, 1984, at the Administration Office on Highway 27. I am enclosing a copy of the handbook regulation advising you of the hearing and your rights pertaining to the hearing.
The Wilkinsons did not appear before the school board on June 14 because of prior commitments of the father, but appeared on July 12, 1984. The minutes of that meeting concerning this matter show the following:
The Warren County Board of Education met at 2:00 o'clock P.M. in the Office of the Superintendent of Education for their regular monthly business meeting held in accordance with the law. Present were Ed Link, President, Molly Boa, James Wilkerson, Walter Christian and Morris Keith. Also present were Sharp W. Banks, Jr., Superintendent and Jim Chaney, Board Attorney.
The meeting was called to order by the President, Ed Link and opened with prayer by Walter Christian.
On Motion made, seconded and carried, the Board approved the Minutes of the Regular Meeting held on June 14 and of the Special Meetings held on June 22 and July 5, 1984.
Upon Motion made by Dr. Link, seconded by Morris Keith, and unanimously carried, the Board voted to go into Executive Session to discuss student disciplinary maters (sic) and personnel matters. Mr. Banks advised that the hearing for Renee Wilkinson had originally been set for the June Board Meeting but had been postponed until today at the request of Mr. and Mrs. Wilkinson who were unable to attend the June Board Meeting. Mr. Franklin advised that this was the same incident for which Linda Horan had come before the Board last month and he presented a copy of his written report *457 concerning same which is attached to and incorporated with these Minutes. Renee Wilkinson attended the meeting with both of her parents. Dr. Link advised Renee that the Board had received a report that she and another student had drank (sic) some beer at Renee Wilkinson's house on the morning of June 1, 1984, after her parents had gone to work and prior to the students coming to school that day, and Dr. Link asked her if that were true. Renee answered that it was. Mr. Wilkinson then presented a written motion requesting dismissal of the charges on the grounds that the Board of Education lacked authority over matters which occurred off school grounds. Copy of the Motion is attached to these Minutes and incorporated herein. The Motion was denied. Mr. Wilkinson then requested that he be allowed to act a (sic) legal counsel for his dauthter (sic) which motion was granted. Copy of his written request is also attached to these minutes. After a lengthy discussion with Mr. and Mrs. Wilkinson, and consideration of all the evidence, upon Motion made by James Wilkerson and seconded by Morris Keith, it was the unanimous decision of the Board that Renee Wilkinson had violated the school rules by drinking beer and then coming onto the campus and that she would therefor lose all credit for second semester.
After a call to the school board, the Wilkinsons were advised of the results of the hearing by a letter from the president of the school board dated July 18, 1984, which reads as follows:
It is the unanimous decision of the Warren County Board of Education that Renee Wilkinson violated school policy by drinking beer prior to coming to school on the morning of June 1, 1984, and that although this occurred on the last day of school, she will, as is the uniform policy for this type of offense, lose credit for her second semester work.
The Warren County School District and the Board of Education are extremely interested and concerned about your daughter. Due to her excellent academic record and the fact that she is only a sophomore, she will likely be able to graduate with her class. You should contact Mr. Franklin at Warren Central High School and set up an appointment so that she can be given the benefit of special scheduling for the next few semesters which will enable her to make up those credits that she has lost.
The Wilkinsons had a right to appeal; however, they elected to seek an injunction for violation of constitutional rights in chancery court, and the matter was heard before the Chancellor a very short time before the opening of the next semester. On July 29, 1984, the Chancellor entered the following opinion:
This cause has been heard on a Complaint for Injunctive Relief, by agreement of counsel consolidated under M.R.C.P. Rule 65 as to both temporary and permanent relief.
The facts are not in dispute. The child, sixteen (16) years old, attended Warren Central High School during the 1983-84 school year as a 10th grade student. On June 1st, 1984, the last day of regular classes, at her parent's home before leaving for school, the child and another female classmate, got a can of her father's beer out of the refrigerator and shared about three sips each. Subsequently, they went to school. Sometime after lunch, the other child admitted the above facts to some school authority. The Principal took the child involved in this case out of class sometime after 1:00 p.m. to a conference room and extracted an admission of the above facts from her. The school day ended at 1:30 p.m. The Principal admitted that the child did not even have any odor of beer or alcohol, had not created any disturbance or disruption of any kind, and had no prior disciplinary record. June 1st was the last day of classes for the semester, and the child qualified for exemption from taking final examinations.
The student handbook, promulgated at the beginning of the school year, page 23, states:

*458 Philosophically, the school believes that disciplinary actions should be minimized while assuring and guaranteeing the entire school community that an orderly learning environment is maintained.
Notwithstanding the undisputed fact that the child had caused absolutely no ripple in the "orderly learning environment" and that the school day was over in a few minutes, the Principal determined that the child had committed a "Type IV Offense" against the policy of the Board of Education promulgated in the student handbook, page 26, as follows:
Alcohol or Drugs
Students having alcoholic beverages or any amount of "controlled substances" (drugs) in their possession or use while traveling to or from school, to or from any school buildings or facilities during the school day, on school property, at school-sponsored activities, or on school-sponsored trips will be expelled for the remainder of the semester in which such infraction of the rule occurs. Said students must appear before the Warren County Board of Education prior to readmission to school.
The proof is unclear whether the child was expelled, or whether the matter was simply referred to the Board of Education.
In due course, the child received her grades for the semester and passed all subjects.
By agreement, the matter was set for hearing before the Board of Education on July 12th. By letter dated 22 June, the child's father requested the appearance of certain witnesses at the hearing; two of these teachers were not produced at the hearing.
The Board of Education apparently concluded that a few sips of beer in the privacy of her own home before leaving for school was as heinous as assaulting a teacher or student with a gun in school, and exacted the maximum penalty of loss of credit for the child's semester work.
It is to be remembered that this case is before this Court on a Complaint for Injunction, not on appeal from the decision of the Board of Education. Therefor (sic) the action of the Board is not here subject to review. The sole question is whether rights of the child under the Fifth, Sixth, Eighth or Fourteenth Amendments to the Constitution of the United States have been violated. The Courts of this state are just as zealous in guarding federal constitutional rights as are the Federal Courts.
A student facing suspension (or by implication, loss of credit for the semester) has a property interest that qualifies for protection under the Due Process Clause of the Fourteenth Amendment, Goss v. Lopez (U.S. Supreme Court, [419 U.S. 565,] 95 S.Ct. 729 [42 L.Ed.2d 725]). The failure of the Board of Education to have available Ms. Cynthia Huffstetler and Jack Pace, accusing teachers, for examination as requested was a denial of procedural due process to the child, Dillon v. Pulaski County Special School District, United States Court of Appeals, Eighth Circuit, 594 F.2d 699. It makes no difference whether their testimony might have changed the mindset of the Board of Education.
"Due Process", the constitutional technacality (sic) that has kept admitted criminals from just punishment keeps this child from losing a semester's work for taking a couple of sips of beer at home on the morning of June 1st. To paraphrase, perhaps some good can come out of Galilee.
The Court having concluded that the Injunction must issue for lack of procedural due process, it is not necessary to consider the validity of the other constitutional issues raised.
Accordingly, the relief sought in the complaint is granted. The child is further awarded nominal damages of one dollar and attorney's fees of $1,000.00 as damages.
*459 We have no disagreement with the Chancellor's opinion and could well adopt the same as the opinion of this Court. However, though busy, we do have more time to delineate the proper procedure in such matters and to give reasons therefor. The Chancellor's opinion could have gone much further.
It goes undisputed in this record that the superintendent of the schools, prior to the hearing, advised the appellee's father that his "daughter broke the rules and she was going to be punished". It is apparent that no witnesses were questioned at the school board hearing and, according to the president of the school board, none were offered to Mr. Wilkinson, who proposed to represent his daughter, for cross-examination. According to Mr. Wilkinson, "after about 30 minutes and after a member of the board advised me that the school board could interpret the law any way they wanted to, I felt it was fruitless to produce any witnesses whether they be for my daughter or not." This goes undisputed.
First, we are compelled to advise this school board and others that might entertain such an erroneous notion as to the source of their powers. That source is the state of Mississippi, acting through its legislature, and the school boards exercise only such powers as are conferred upon them by law. Harrell v. City of Jackson, 229 Miss. 815, 92 So.2d 240 (1957), and the authorities there cited. This rule was recognized in Clinton Mun. Separate School Dist. v. Byrd, 477 So.2d 237, 240 (Miss. 1985), and it is well that we recite Judge Robertson's language as follows:
While school boards have substantial disciplinary authority, that authority is legal in its derivation and its exercise is subject ultimately to the Constitution of the United States:
The Fourteenth Amendment, as now applied to the states, protects the citizens against the state itself and all of its creatures  boards of education not excepted. These have important, delicate, and highly discretionary functions but none that they may not perform within the limits of the Bill of Rights.

West Virginia State Board of Education v. Barnette, 319 U.S. 624, 637, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943). See also, Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 507, 89 S.Ct. 733, 737, 21 L.Ed.2d 731, 738 (1969).
A student's interest in obtaining an education has been given substantive and procedural due process protection. See, e.g., Plyler v. Doe, 457 U.S. 202, 217, 102 S.Ct. 2382, 2395, 72 L.Ed.2d 786 (1982); Bolling v. Sharpe, 347 U.S. 497, 500, 73 S.Ct. 693, 695, 98 L.Ed.2d 884 (1954); Pierce v. Society of Sisters, 268 U.S. 510, 535; 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 400, 43 S.Ct. 625, 627, 67 L.Ed. 1042 (1923); 46 Miss.L.J., at 1043. This protected interest, however, is largely a state created interest, for the provision of free public education has been accepted as a responsibility of this state (as well as the other 49 states).
Mississippi Code Annotated § 37-9-71 (1972) provides as follows:
The superintendent of a school district and the principal of a school shall have the power to suspend a pupil for good cause or for any reason for which such pupil might be suspended, dismissed or expelled by the board of trustees. However, such action of the superintendent or principal shall be subject to review by and the approval or disapproval of the board of trustees.
Section 37-7-301 provides in part as follows:
The boards of trustees of school districts shall have the following powers
.....
(e) To suspend or expel a pupil for misconduct in the school, upon school buses, on the road to and from school, during recess or upon the school playgrounds ...
The school board adopted a rule defining misconduct on the use of alcohol *460 and drugs, as noted by the Chancellor in his opinion. The plain reading of the rule clearly reveals that the appellee did not violate it. The beer was consumed in her home. She did not have possession of it on the way to school or use it while traveling to school or on the school grounds or in the buildings. The school board has called our attention to no rule expressly or impliedly prohibiting a student from drinking beer at home  indeed, we doubt a school board would have authority to make any such rule, although the point is not before us today. It is elementary that it is a violation of due process to punish one for conduct that has not been lawfully condemned. This requires no citation of authority. In Soglin v. Kauffman, 418 F.2d 163 (7th Cir.1969), the late Professor Lon L. Fuller is quoted as follows: "The first desideratum of a system for subjecting human conduct to the governance of rules is an obvious one: there must be rules." The opinion there continues as follows:
The proposition that government officers, including school administrators, must act in accord with rules in meting out discipline is so fundamental that its validity tends to be assumed by courts engaged in assessing the propriety of specific regulations. See Tinker v. Des Moines School District, 393 U.S. 503, 513-514, 89 S.Ct. 733, 740, 21 L.Ed.2d 731. The doctrines of vagueness and overbreadth, already applied in academic contexts, presuppose the existence of rules whose coherence and boundaries may be questioned. Cf. Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629; Snyder v. Board of Trustees, University of Illinois, 286 F. Supp. 927 (N.D.Ill. 1968; 3-judge court); Buttny v. Smiley, 281 F. Supp. 280 (D.Colo. 1968). These same considerations also dictate that the rules embodying standards of discipline be contained in properly promulgated regulations.
See also Harris v. Mississippi State Real Estate Com'n., 500 So.2d 958, 966-967 (1986).
It is almost trite to state that one has to be advised of the nature and cause of the accusation against him, and that such cause must be previously determined. Nevertheless, from time to time courts find it necessary to advise the citizenry of the existence of such constitutionally protected rights. As much as we revere our forefathers  Madison and others who gave us our Constitution  we recognize that the law on these matters far outdated their time. The ancient Romans enjoyed this privilege. Paul asserted his right as a Roman citizen to stand at Caesar's judgment seat, and Governor Festus, on informing King Agrippa of Paul's assertion, told him of his answer to the Jews who had demanded immediate judgment. His statement was:
To whom I answered, It is not the manner of the Romans to deliver any man to die, before that he which is accused have the accusers face to face, and have license to answer for himself concerning the crime laid against him.
(Acts 25:16). And Festus said,
For it seemeth to me unreasonable to send a prisoner, and not withal to signify the crimes laid against him.
(Acts 25:27).
The cases in this jurisdiction announcing the same principle are legion, and apply to school boards as well as the courts. Questions of law and constitutional rights are for judicial determination. County Board of Education of Alcorn County v. Parents and Custodians of Students at Rienzi School Attendance Center, 251 Miss. 195, 168 So.2d 814 (1964).
Here, in order to protect the constitutional rights of the students, the school board properly adopted a procedure for a de novo hearing before the school board, and further provided that a student would be informed in writing of the charges against him, "the possible penalties therefor, that he will have the right to confront and cross-examine witnesses against him, his right to call witnesses in his own behalf, his right to be represented by counsel, and advise him that he may request in *461 writing the names of the witnesses that may testify against him."
In this case, the notice only told the date of the hearing and, for all practical purposes, nothing else. It did state that she came to school after drinking beer at home; however, there is no recitation as to what rule was violated. The hearing being de novo, the burden was on her accusors to go forward, but to the contrary the president of the school board merely inquired of the appellee if she had drunk beer, and the board received a report from the school principal, presumably in writing, inasmuch as the board president said no witness was offered for cross-examination. The school's rule affording due process was ignored and the hearing became no more than an inquiry and discussion.
This should be sufficient for the purpose of this opinion. However, we bring to the attention of the school board Sec. 28 of the Mississippi Constitution and the Eighth Amendment to the Constitution of the United States prohibiting cruel and unusual punishment. The punishment inflicted here appears to us to be unreasonable when considered along with other offenses set forth in the handbook. There are four types of offenses: Type I, the lesser of the offenses, provides for corporal punishment, in or out of school suspension, and grants options to the principal. Type II offenses provide for a five-day suspension for a first offense. Type III offenses, which includes stealing and possession of weapons, provides for suspension of ten days or more. Our present offense, Type IV, has the harshest of all punishments  suspension for the remainder of the semester, loss of all credits, and no readmission without appearing before the school board. The school board states, according to the president, that they are "evenhanded" because they exercise no discretion in Type IV offenses though permitted by the rule. It is suggested that the rules themselves are not evenhanded. It taxes the credulity of the Court to believe that two or three sips of beer at home is as heinous an offense as stealing or carrying a weapon. Type I offenses include "improper boy-girl conduct". Admittedly this is a rather broad rule, but, if carried to its ultimate, fornication would not be as offensive as two or three sips of beer.
According to the record, the school board does not exercise its discretion. We thought that Judge Robertson, in Clinton v. Byrd, supra, amply pointed out that flexibility and leniency were desirable. He stated:
The school board may choose not to exercise its power of leniency. In doing so, however, it may not hide behind the notion that the law prohibits leniency for there is no such law. Individualized punishment by reference to all relevant facts and circumstances regarding the offense and the offender is a hallmark of our criminal justice system.
477 So.2d at 241.
Wise men through the centuries have exercised discretion. Solomon stated, "The discretion of a man deferreth his anger; and it is his glory to pass over a transgression." (Proverbs 19:11).
The legislatures of the various states and the national congress have, from time to time, vested trial judges with discretion in the matter of punishment and, if judges did not exercise their discretion, particularly leniency, it would be impossible for the citizens to afford the burden of a penitentiary system. In Ross v. State, 480 So.2d 1157 (Miss. 1985), this Court quoted with approval the United States Supreme Court in North Carolina v. Pearce, 395 U.S. 711, 723, 89 S.Ct. 2072, 2079, 23 L.Ed.2d 656, 668 (1969), wherein it was stated: "Prevalent modern philosophy of penology is that the punishment should fit the offender and not merely the crime."
We, therefore, hold that the Chancellor was correct in stating that procedural due process was not afforded the appellee. This is true because she was not provided the witnesses against her, though requested in writing as provided by the rule. No witnesses at all were presented nor afforded for cross-examination. She was tried *462 and convicted for an offense that did not exist.
The Constitution of the State of Mississippi and the Constitution of the United States mandate due process. We realize that it is difficult at times for laymen to understand exactly what is required of them. However, the taxpayers afford these boards attorneys and their services should be utilized.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] I Timothy 1:8, Paul's letter to Timothy after release from the Roman prison.