681 So.2d 110 (1996)
In the Interest of T.H., III, a Minor.
BOARD OF TRUSTEES OF the PASCAGOULA MUNICIPAL SEPARATE SCHOOL DISTRICT and Dr. George Ayers
v.
T.H., III, a Minor, By and Through His Parents and Next Friends, T.H., Jr. and M.A.H.
No. 93-CA-00441-SCT.
Supreme Court of Mississippi.
September 12, 1996.
As Modified on Motion for Certification December 19, 1996.
*111 Raymond L. Brown, Patrick R. Buchanan, Brown & Watt, Biloxi, Sarah E. Berry, Ocean Springs, for appellant.
Gary L. Roberts, Pascagoula, for appellee.
Before PRATHER, P.J., and JAMES L. ROBERTS, Jr., and MILLS, JJ.
*112 MILLS, Justice, for the Court:
In this case, we are called upon to construe provisions of the Mississippi Compulsory Attendance Law as it affects the power of local school boards to discipline students. The Youth Court of Jackson County entered a permanent injunction to prevent the Board of Trustees of the Pascagoula Municipal Separate School District [hereinafter Board of Trustees] from "taking any further disciplinary action or punitive action of any kind against T.H., III, in connection with or in any manner related to the incident which is the basis of this action... ." The youth court found two provisions of the Student Handbook violated various constitutional rights of the student. From this ruling, the Board of Trustees appeals to this Court. We hold the lower court erred regarding the Board of Trustees's alcohol policy. For reasons set forth below, we hold the lower court, in part, ruled correctly regarding the Board of Trustees's absences policy. Thus we affirm in part, modify in part, and remand.

FACTS AND PROCEDURAL HISTORY
T.H., III [hereinafter T.H.], was a sixteen-year-old male student attending the eleventh grade of Pascagoula High School. On October 2, 1992, a Friday evening, T.H. and two friends went to a local convenience store and asked a man outside the store to buy beer for them. The boys took the beer to a friend's house and drank it. T.H. consumed a couple of beers. T.H. and the others then went to the high school football game at War Memorial Stadium in Pascagoula. When the boys arrived at the game, the ticket-taker detained them at the gate because she smelled alcohol on them. Police officers, in conjunction with the school's security officer, Larry Lee, later released T.H. to his parents' custody. The matter was referred to Dr. James M. Harrison, principal of the high school, for disciplinary action.
On October 5, 1992, Dr. Harrison talked to T.H. and the other students involved in this incident. According to Dr. Harrison, T.H. admitted consuming alcohol and going to the football game. That same day, T.H.'s parents were notified that the punishment for T.H.'s offense was a ten-day suspension from school.
The Student Handbook containing the Pascagoula Municipal Separate School District policy on alcohol states:
PROHIBITED ACTIVITIES
It shall be against school policy for any student:
... .
(2) To possess, procure, or purchase, or attempt to possess, procure, or purchase, to be under the influence of (legal intoxication not required), or to use or consume, the substances listed or described in this policy, or what is represented by, or to, the student to be any of the substances listed in this policy, or what the student believes is any of the substances listed or described in this policy.
PROHIBITED SUBSTANCES
... .
(2) Alcohol or alcoholic beverage.
Any student engaging in [the activity described above] shall be immediately suspended for ten (10) days.
As punishment for suspension, the student receives no credit for classes missed during the suspension period. The policy, as described in the School Handbook, states:
SECTION IV: NO CREDIT
When a student misses class time because of ... suspension ... he will be allowed to make-up work, but NO PERCENT OF CREDIT FOR A GRADE will be given. A grade of zero will be recorded for any grade given during this time. An exception will be made for the student suspended during nine-weeks and/or semester exams. Exams may be taken, and the student will receive the grade earned on each exam.
In addition to these penalties, the school district has a policy on absences. This policy, critical to our decision, states:
In the secondary schools, the limit shall be six (6) days of unexcused absences per period per semester. On the seventh (7th) absence from a period, the course grade *113 for the semester goes to 65/F or actual grade, whichever is lower.
... If an absence is unexcused make-up work will not be allowed.
The Board of Trustees's application of this policy to T.H. meant that he would: (1) be suspended for ten days; (2) receive a grade of zero for each day he was suspended; and (3) receive, at best, a grade of 65/F for the semester's work. Before his suspension, T.H. had straight B's in all of his classes.
T.H.'s parents appealed the matter to the Superintendent, Dr. George Ayers. He upheld the suspension. T.H.'s parents then appealed to the Board of Trustees at the November 2, 1992, board meeting. Legal counsel represented T.H. On November 2, 1991, after a full hearing, the Board of Trustees upheld the suspension of T.H. for violating board policy concerning alcohol use. Upon learning the Board of Trustees would not readmit T.H. pending appellate review, T.H. sought an injunction in the Jackson County Youth Court.
On November 9, 1992, the youth court granted T.H.'s request for a Temporary Restraining Order, and ordered T.H. reenrolled at the high school. At the time T.H. reenrolled at the high school, he had served five days of his ten-day suspension. T.H. received four C's and an "F" for the second period of the first semester as a result of the five-day suspension. However, because he scored well on his final exams (two A's and three B's) T.H.'s final grades were four B's and a C. Following an unsuccessful interlocutory appeal, the youth court held a hearing on April 1, 1993, to decide whether a permanent injunction should issue. At the conclusion of that hearing, the youth court held that it had jurisdiction over the matter pursuant to Section 43-21-621 of the Mississippi Code. On the merits, the youth court held that the policies of the Board of Trustees with regard to alcohol and absences deprived T.H. of various constitutional rights. The youth court permanently enjoined the Board of Trustees from taking any further disciplinary action against T.H. in connection with the incident. The Board of Trustees appealed to this Court arguing the youth court erred in holding it had jurisdiction as well as erring on the merits.

A.

JURISDICTION
The main defense to the youth court's action below, the issue of jurisdiction, has become an afterthought on appeal. The Board of Trustees asserts that the youth court has no jurisdiction to reinstate T.H. to school. They rely on the holding in Charter Medical Corp. v. Mississippi Health Planning and Development Agency, 362 So.2d 180, 182 (Miss. 1978), where no statutory scheme for appeals from administrative agencies is provided, that jurisdiction properly lies with the chancery court
In this case, T.H. asserts, correctly, that in 1989 the Legislature passed § 43-21-621 to provide the youth court with jurisdiction to order a Board of Trustees to enroll a child. The statute then in effect read:
The youth court may, in compliance with the laws governing education of children, order any state-supported public school in its jurisdiction after notice and hearing to enroll or reenroll any child in school, and further order any appropriate educational services. The court shall have jurisdiction to enforce school and education laws. Nothing in this section shall be construed to affect the attendance of a child in a legitimate home instruction program.
1989 Miss. Laws ch. 441, § 5 (current version at Miss. Code Ann. § 43-21-621 (Supp. 1995)).
We note that this section of the Code has been amended twice to expressly give the youth court power to reenroll students suspended or expelled under the provisions of §§ 37-9-71 or 37-7-301. Section 37-7-301 is the statute the Board of Trustees relies upon to state they have disciplinary power independent of the youth court's jurisdiction. Later amendments clarify the Mississippi Legislature's intent to give jurisdiction to the youth court. We hold the Youth Court of Jackson County had jurisdiction pursuant to § 43-21-621 of the Mississippi Code.

*114 B.

AUTHORITY OF THE SCHOOL BOARD AND PROCEDURAL DUE PROCESS
As to these issues, the Board of Trustees asks this Court for an advisory opinion. At no time below did T.H. assert or argue that the Board of Trustees did not have statutory power to create an alcohol policy or set punishments for the violation of such a policy. Neither did T.H. argue below that he did not receive procedural due process. Thus, there never was an actual controversy as to these issues. "We have held that the review procedure should not be allowed for the purpose of settling abstract or academic questions, and that we have no power to issue advisory opinions." Allred v. Webb, 641 So.2d 1218, 1220 (Miss. 1994); see also Insured Savings & Loan Association v. State, 242 Miss. 547, 135 So.2d 703 (1961); McLendon v. Laird, 211 Miss. 662, 52 So.2d 497 (1951). We do not reach these issues.

C.

CONSTITUTIONALITY OF THE SCHOOL BOARD'S ALCOHOL POLICY AS APPLIED TO T.H.
The lower court ruled from the bench that the school's policy regarding alcohol was unconstitutionally overbroad. The court ruled thus because the policy has no geographic limitation on where or when a child might drink alcohol and not suffer suspension. Dr. Harrison, the principal of Pascagoula High School, testified that he was not familiar with any provision on the handbook that limited the scope of the policy. He did testify that the policy applied "at school or any school activity, on the way to and from the school or school bus."
The Board of Trustees asserts that the judge's ruling was erroneous. They describe this in two ways. First, since T.H.'s activity was within allowable boundaries of the Board of Trustees's authority to proscribe, the policy is not overbroad as it applies to him. He may not complain of the vagueness of the policy as it applied to the activities of third parties. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc. 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, rehearing denied, 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982).
Put another way, the Board of Trustees asserts that the policy may not be declared facially overbroad where: (1) there are a substantial number of situations where the policy may be validly applied; (2) the policy covers a range of easily identifiable conduct which may be constitutionally proscribed; and (3) the legislation is susceptible to a narrowing interpretation. Erznoznik v. Jacksonville, 422 U.S. 205, 215, 95 S.Ct. 2268, 2275-76, 45 L.Ed.2d 125 (1975).
We agree with the Board of Trustees. Here, T.H. admitted consuming alcohol before entering school property to attend a school athletic function. The policy validly applies to T.H.'s conduct. The Board of Trustees may constitutionally proscribe consumption of alcohol within limits. The policy is susceptible to a narrowing interpretation, as stated by Dr. Harrison and codified at § 37-3-301(e) of the Mississippi Code. We reverse this portion of the youth court's ruling.

D.

WHETHER THE PUNISHMENT WAS ARBITRARY AND CAPRICIOUS
In this issue lies the principal battle between the litigants. The Board of Trustees submits the youth court erred in holding the Board's automatic 65/F policy for seven or more absences denied T.H. his fundamental right to an education. T.H. replies that the trial court was correct. As a starting point we agree that T.H. has a fundamental right to an education as guaranteed by Article 3, Section 14 of the Mississippi Constitution. Clinton Municipal Separate School District v. Byrd, 477 So.2d 237, 240 (Miss. 1985).
Two cases in our state comprise the entire body of case law on the subject of arbitrary and capricious policies regarding student discipline. Warren County Board of Education v. Wilkinson, 500 So.2d 455 (1986); Clinton Municipal Separate School District v. Byrd, 477 So.2d 237 (Miss. 1985). In both cases, we excoriated local Boards of Trustees for handing out punishment we thought unmerited, *115 but this Court has never reversed on the grounds that a punishment was arbitrary and capricious. In Wilkinson, we opined that the punishment of expulsion might violate state constitutional protections against cruel and unusual punishments. Wilkinson, 500 So.2d at 461. Nevertheless, we reversed for failure to provide procedural due process. Id. at 461. In Byrd, we upheld the punishment inflicted, even though we urged the local school officials to learn that "`earthly power doth ... show likest God's when mercy seasons justice.'" Byrd, 477 So.2d at 242.
In Byrd, two female students were suspended for a semester for defacing a school building by painting a large numeral one on the wall of a school building. Id. at 237. We stated that the appropriate test for determining whether the policy violated a student's substantive due process rights is:
As a matter of state substantive due process, a school board's disciplinary rule or scheme is constitutionally enforceable where fairly viewed it furthers a substantial legitimate interest of the school district. The authority vested in school boards consistent with this constitutional limitation includes substantial discretion with respect to the administration of punishments to students who violate school rules.
Byrd, 477 So.2d at 240-41.
This Court issued a warning that the mandatory wording of the punishment inflicted does not deprive school boards and their subordinates of the authority to administer the rule with flexibility and leniency. The Board of Trustees may choose not to exercise its power of leniency. In doing so, however, it may not hide behind the notion that the law prohibits leniency for there is no such law.
Id. at 241.
The Court upheld the suspension of the two female students stating "[w]hat the board has done and proposes to do here violates no rule of law which has been called to our attention, nor any right secured to these girls by any such rule." Id. at 242 (emphasis added).
Before considering the constitutional question, the Court seizes upon this basic concept, noted in Byrd, that the power of the local Board of Trustees may be limited by statutory law. The Mississippi Legislature has promulgated the Mississippi Compulsory School Attendance Law which influences local school board's authority regarding absences and discipline. Miss. Code Ann. §§ 37-13-91 to -107 (Supp. 1995). The reason our attention is drawn to these statutes is that the parties have called our attention to § 43-21-621 in their dispute over whether jurisdiction vests in youth court. The Legislature has, over the past seven years, significantly amended § 43-21-621 along with §§ 37-13-91 and 37-13-92 to work in unison. Our holding above, that the youth court is vested with jurisdiction in the matter, is confirmed by these recent amendments. Likewise here, the fact that these statutes, by their own terms, incorporate one another, compel us to the intractable conclusion that the Mississippi Legislature has spoken to the specific problem that occurred here. These amendments, and this case, are important in several aspects.
One, the Mississippi Compulsory School Attendance Law sets forth the public policy of this state as to the attendance of students in schools. These statutes limit the power of boards of trustees to kick students out of the schoolhouse door in disciplinary proceedings. Second, they place power in the youth court, a court which knows all too well the problems involving truants. Third, this legislation offers this Court an attractive alternative to avoid delving into school discipline cases on a constitutional level. The legislation, instead, demands that the students continue to receive an education after disciplinary problems.[1] A statutory solution to the problem of discipline is simpler to adjudicate and provides more certainty for interested segments of our society to base its *116 decisions on than any difficult balancing of intangible protected interests could achieve.[2]
We begin by considering the School Handbook. The no-credit provision and the absences provision contemplate different goals. Simply put, the no-credit provision is intended to deter general student disciplinary problems. Distinguish this from the specific problem of truancy. The absences policy deters truancy. While the behavior leading to suspension is unexcused in a moral sense, the distinction between absences due to truancy and days missed due to suspension is meaningful to the current case. More importantly, the Mississippi Compulsory School Attendance Law makes this distinction. The Mississippi Compulsory School Attendance Law compels us to the conclusion that the Board of Trustees' position in this case contravenes public policy.
The Mississippi Legislature provided for alternate school programs in conjunction with the Mississippi Compulsory School Attendance Law. Section 37-13-92, in effect at that time stated:
Beginning with the school year 1991-1992, the school boards of all school districts are authorized to establish, maintain, and operate, in connection with the regular programs of said school district, an alternative program for, but not limited to, the following categories of compulsory-school-age students:
(b) Any compulsory school-age-child who has ... (ii) has been suspended or expelled from school. .. .
1992 Miss. Laws ch. 524, § 9 (current version at Miss. Code Ann. § 37-13-92 (Supp. 1995)).
Beginning with the 1993-94 school year, the Legislature mandated that all school districts shall maintain such a program. 1994 Miss. Laws ch. 555, § 1; 1994 Miss. Laws ch. 607, § 12 (current version codified at Miss. Code Ann. § 37-13-92 (Supp. 1995)). The Legislature's intent is to keep children in the school environment so that they continue to learn in a more structured environment. Alternative programs prevent the suspended or expelled student from disrupting the regular school program. Simultaneously these programs provide an alternative preferable to allowing the suspended or expelled student to run free on the streets. An unsupervised environment greatly increases the risk of the student's dropping out of school or turning to drugs and crime instead of becoming a part of orderly society.
In the statute, the Legislature makes no exceptions for particular categories of offenses. Suspended or expelled students are eligible for the alternate programs where they exist. The Pascagoula Municipal Separate School District maintained such a program. However, students suspended for violations of the school's alcohol policy were not eligible.[3] The Student Handbook states that "[s]econdary students are eligible for attendance at an in school suspension program in lieu of suspension from school. This option is offered with the exception of suspensions for serious infractions such as violations of the drug/alcohol policy... ."
Section 37-13-91 dovetails into the intent of the Legislature to provide alternate schools for children. The provision in effect then, § 37-13-91 of the Mississippi Code (Mississippi Compulsory School Attendance Law) stated that:
A parent, guardian or custodian of a compulsory-school-age child in this state shall cause such child to enroll in and attend a public school or legitimate nonpublic school for the period of time that such child is of compulsory school age... .
1992 Miss. Laws chapter 524, § 8 (current version at Miss. Code Ann. § 37-13-91(3) (Supp. 1995)).
T.H. was a compulsory-school-age child, as defined by the Code, at the time of his offense. 1992 Miss. Laws chapter 524, § 8(2)(f) (current version at Miss. Code Ann. § 37-13-91(2)(f) (1972)). The Compulsory Attendance Law defined an unlawful absence as:

*117 (4) An "unlawful absence" is an absence during a school day by a compulsory-school-age child, which absence is not due to a valid excuse for temporary nonattendance. Days missed from school due to disciplinary suspension shall not be considered an "excused" absence under the provisions of this section.
(f) An absence is excused when it results from the attendance of a compulsory-school-age child at the proceedings of a court or an administrative tribunal if such child is a party to the action or under subpoena as a witness.
1992 Miss. Laws chapter 524, § 8 (current version at Miss. Code Ann. § 37-13-91(4) and (4)(f) (Supp. 1995)).
Reading these statutes in pari materia, the Legislature allowed school boards to maintain an alternate program for suspended children. Today these alternate programs are mandated. When these children attend the programs, they are not absent from school. It is only when these children do not attend the alternate program provided for them that the absence is unexcused. In this case, the Board of Trustees provided for an alternate program, but refused to allow T.H. to attend. The Legislature has mandated that the absence be excused. Returning to our starting point, the Legislature has drawn a distinction between a student's absence due to punishment and a student's absence as a truant. The Legislature has made public policy crystal clear that a suspended or expelled student should stay in school.
Here, the Board of Trustees formed an alternate program for suspended students, but refused to allow T.H. to attend. We hold that the Board of Trustees may not use its absences policy to fail the student. Such a result runs contrary to the purpose and intent of the Mississippi Compulsory School Attendance Law. This is not to say that the punishment for an infraction of a school's disciplinary policy cannot be the lowering of a semester grade. The Legislature has given school boards this power to use in their discretion. See Clinton Municipal Separate School District v. Byrd, 477 So.2d 237 (Miss. 1985). But where the Boards of Trustees created an authorized alternate program to out-of-school suspension, a school may not force a student to be absent, then count those absences against him to lower his grade. Such a policy violates the purpose of our state's compulsory attendance law. As the discipline imposed on T.H. is contrary to legislative policy, the 65/F provision of the Pascagoula Municipal Separate School District is arbitrary and capricious as applied to T.H. Thus, the trial court ruled correctly that the action of the Board of Trustees was arbitrary and capricious, not on constitutional grounds, but on statutory ones. We do not reach the constitutional question.
We find it proper to make a slight modification to the trial court's injunction. Where the Student Handbook clearly states that the punishment during an expulsion is no credit for the days suspended, the youth court could send T.H. back to school thereby avoiding the absences policy, but it should not have enjoined the effect of the no-credit provision. The injunction should be modified to allow the Board of Trustees to give T.H. no credit for his class work for the final five days of his suspension to calculate his final grades.

CONCLUSION
In conclusion, the youth court judge reached the correct disposition, although alternative reasoning should have been used. The boards of trustees have the authority to give a student an "F" in all of his classes for a semester for a single minor infraction without violating the student's substantive due process rights. This is true despite any gross unfairness perceived by this Court. See Clinton Municipal Separate School District v. Byrd, 477 So.2d 237 (Miss. 1985). However, this is not what the Board of Trustees did. The Board of Trustees suspended him for ten days, out-of-school, and would give him a zero for each day missed. That is the punishment. The Board of Trustees then counted the days of suspension as absences where they had made available an in-school suspension program, an alternative to out-of-school suspension. The Mississippi Compulsory School Attendance Law makes it clear that children should be kept in school (regular or alternate) when suspended or expelled. Insofar as the dissent states "some offenses are serious enough to mandate *118 that a student be suspended completely from school and not placed in an alternative school," there is no disagreement. However, the Mississippi Compulsory Attendance Law mandates limits to total expulsion which this Court may not disregard. Where the school does not allow the student to attend an alternate program, the youth court has the authority to place the student in school. Furthermore, where the school does not allow the suspended student to attend an alternate program, these absences are considered excused as a matter of statutory law. It is only where the student is suspended or expelled and does not take advantage of the alternate programs that the absence is unexcused. The youth court erred in that part of the injunction ordering the school district to give T.H. the daily grades he earned for the final five days of his suspension.
AFFIRMED IN PART; MODIFIED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
PRATHER and SULLIVAN, P.JJ., and PITTMAN, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
BANKS, J., concurs with separate written opinion.
McRAE, J., dissents with separate written opinion joined by DAN LEE, C.J.
BANKS, Justice, concurring:
I concur in the result reached by the majority and all that is said concerning the jurisdiction of the youth court. I write separately because I am uncomfortable with the path taken to the result on the merits. I find no statutory command that the school district act in a manner different than it did in the instant case. Nevertheless, I agree with the result obtained because, in my view, the severity of the punishment is unconscionable as applied to the particular transgression found here. See Warren County Bd. of Education v. Wilkinson, 500 So.2d 455, 461 (Miss. 1986) (Condemning similar punishment for similar conduct involving alcohol.)
McRAE, Justice, dissenting:
There is a fundamental constitutional right to an education. Clinton Municipal Separate School District v. Byrd, 477 So.2d 237, 240 (Miss. 1985). However, when one student's actions on the school grounds or at a school function jeopardize the safety and general well-being of other students and teachers, his rights may be abridged. I therefore disagree with the majority's conclusions about the Board's no-credit policy when a student is suspended. Furthermore, by finding that youth court had jurisdiction to reinstate T.H., the majority emasculates the authority of the Board of Trustees and provides the youth court with greater powers than those afforded it pursuant to Miss. Code Ann. § 32-21-621 (1989).
T.H. was suspended in 1992, when he was a junior in high school. Obviously, he long since has graduated. His situation, however, reminds us that in order to maintain discipline in our schools, a school board must be allowed to adopt an attitude of zero tolerance toward drug and alcohol offenders as well as toward those students committing other felonies or serious misdemeanors, such as carrying weapons on campus. Some offenses are serious enough to mandate that a student be suspended completely from school and not placed in an alternative school. Placing the student in an alternative school merely changes the location of his disruptive or dangerous behavior and exposes a different group of students and teachers to his influence without really punishing the offender or addressing and/or treating the causes of his problematic behavior.
The youth court system is not intended to function as some kind of "supreme school board." That is to say, a parent cannot parade his child who has been suspended from school over to the youth court and magically have him reinstated, as was done in this case. Miss. Code Ann. § 43-21-621(1989), in effect at the time T.H. was suspended, provided that the youth court could "in compliance with the laws governing education of children, order any state-supported public school in its jurisdiction after notice and hearing to enroll or reenroll any child in school ..." The compulsory school *119 attendance law, § 37-13-91, which the youth court was intended to assist in enforcing, deals only with parental failure to enroll a child in school, not absence from school because of a disciplinary suspension. Thus, while the youth court had authority to effect the enrollment or re-enrollment of a child kept out of school by recalcitrant parents, it had no jurisdiction over T.H. or the Board of Trustees and its disciplinary policies for children found in violation of school drug and alcohol rules.
The legislature did not intend for the youth courts to usurp the power of school boards in governing the reenrollment of students suspended from school is apparent in the current version of § 43-21-621. The youth court is expressly forbidden from ordering the reenrollment of a student suspended or expelled for possessing a weapon on school grounds or "for an offense involving a threat to the safety of other persons or for the commission of a violent act." It may intervene in the reenrollment decision only when the child has been adjudicated delinquent and the return to school and achievement of passing grades is a condition of probation.
There is no evidence that T.H. had been kept out of school by his parents or that he had been adjudicated delinquent. By enjoining the Board of Trustees from taking any further disciplinary action against T.H., therefore, the youth court exceeded its legislative authority and overstepped its jurisdiction. In so doing, the youth court established itself as a supreme school board to intervene when its disagrees with the Board of Trustee's policies or procedures.
Suspension without credit is a harsh rule. It is unfortunate that a student may be suspended during an examination period or on a day that a test is given. Some school districts compensate for this by giving a failing grade of 50-65, rather than a flat zero, to give the student an opportunity to redeem himself. However, unless the Board of Trustees has the authority to enforce any such rule, there can be no effective discipline in our school system. Accordingly, I dissent.
DAN LEE, C.J., joins this opinion.
NOTES
[1] It is worthy to note that the current version of Section 37-13-92 excepts from the alternate school program "student[s] expelled for possession of a weapon or other felonious conduct." Miss. Code Ann. § 37-13-92(1)(a) (Supp. 1995). Under the current version, T.H.'s alcohol violation would not have been expressly excepted and certainly his offense, at best, is a misdemeanor.
[2] We wish to make it clear that the validity of "out-of-school" short-term suspensions which do not cause a student to automatically fail a semester was not presented to the Court in this case and is not decided in this opinion.
[3] The version of Section 37-13-92 in effect at that time did not allow for any class of ineligibility.