KING, C.J.,
for the Court.
¶ 1. The Hinds County School District appeals the chancery court’s decision to reverse the expulsions of R.B., a minor and student of the Hinds County School District and to expunge the expulsions from his record. The chancellor determined that the School Board’s decisions were unsupported by substantial evidence, were arbitrary and capricious, and violated R.B.’s rights of due process. Finding no error, this Court affirms.
FACTS
¶ 2. In February 2004, R.B., a minor, was a student at Byram Middle School. On February 5, 2004, R.B. was called to the office of Principal David Campbell. Campbell advised R.B. that an anonymous female student had informed Campbell that R.B. tried to sell her drugs the previous afternoon. R.B. consented to a search of his backpack, and Campbell also conducted a physical search of R.B.’s person. During the physical search, Campbell had R.B. remove his shoes, socks, and outer shirt. Campbell also searched R.B.’s pants pockets and then asked R.B. to remove any items from his underwear, which he refused to do. The search turned up a cigarette lighter, several CDs, and a nail file device, which Campbell found in a compartment of R.B.’s backpack.
¶ 3. Campbell called R.B.’s father, D.L.B., to come to the school. According to the father’s testimony, Campbell accused his son of selling drugs. When D.L.B. arrived at Byram Middle School, he met with Campbell. D.L.B. testified that Campbell told him that “we know he’s got some [marijuana], but we didn’t find it on him.” Campbell asked D.L.B. to finish the physical search of R.B. by having R.B. remove his underwear. D.L.B. refused. D.L.B. then testified that Campbell threatened his son with expulsion for possession of a weapon-the nail file device-if D.L.B. did not complete the physical search. D.L.B. again refused to strip search his son, so Campbell called the police to take R.B. to the juvenile detention center.[1]
¶ 4. Campbell recommended that R.B. be expelled for one year. Under the appeals structure for disciplinary proceedings, that recommendation proceeded to the Appeals Committee. The Appeals Committee is made up of three members and a hearing officer, who is responsible for conducting the hearing. R.B., through his father, D.L.B., received a letter of notice regarding the Appeals Committee hearing.
¶ 5. The Appeals Committee held its hearing on February 17, 2004. The three-person committee reviewed the principal’s recommendation and the security officer’s report identifying the nail file device as a “pocket knife.” The hearing officer’s testimony indicates that the nail file device was not at the hearing and was not made available for the committee to view. D.L.B. attended the Appeals Committee hearing and spoke on behalf of his son. The Ap *498 peals Committee recommended that R.B. be expelled from Byram Middle School and transferred to the alternative school for the remainder of the school year plus the first nine weeks of the next school year, to be followed by probation for the rest of the following semester.
¶ 6. The School Board then held a hearing on March 11, 2004, to consider the recommendation of the Appeals Committee. R.B. also received a letter of notice regarding the School Board hearing. D.L.B. and R.B. appeared at the hearing, and D.L.B. spoke on his son’s behalf. D.L.B. also presented a nail clipper as representative of the nail file device on which his son’s disciplinary action was based. The Appeals Committee hearing officer disputed D.L.B.’s characterization of the nail file device in his oral report to the School Board. The nail file device, however, was not available for viewing. The School Board decided to have the hearing officer fax over a photocopy of the nail file device the following day and to allow the superintendent to review the photocopy. If the superintendent determined that the nail file device matched the hearing officer’s description, the School Board would uphold the decision.
¶ 7. The following morning, the superintendent received a faxed photocopy of the nail file device. Although the object itself has three attachments, only one prong of the device, which resembles a knife blade, was displayed in the photocopy. The superintendent unilaterally determined that the object depicted in the photocopy was a “weapon;” therefore, the decision of the Appeals Board was upheld. The superintendent faxed a copy of the document she had received to D.L.B. R.B. later received notice of the School Board’s decision, which he timely appealed to the chancery court.
¶ 8. Pursuant to the School Board’s decision, R.B. was transferred to the alternative school for the remainder of the school year. On May 19, 2004, the school’s resident police officer received a report that R.B. and another student had marijuana in their possession. As the officer and the principal were headed to R.B.’s classroom, another student spotted them and alerted the class. The officer took R.B. back to the office and questioned him. R.B. stated that another student, J.D., had offered him marijuana but that R.B. “didn’t mess with the stuff.” R.B. stated that when J.D. realized that the principal and school officer were coming into the classroom, J.D. threw the marijuana at R.B. and told him to hide it. R.B. threw the drugs onto a bookshelf. R.B. signed a type-written statement to that effect.
¶ 9. J.D. admitted to buying marijuana from two other students. J.D. further stated that he “gave all of the marijuana to [R.B.] and [R.B.] tried to frame him by hiding it in [J.D.’s] desk.” A third student, the one who alerted the class to the principal’s approach, submitted a written statement to the effect that R.B. and J.D. were trading the marijuana back and forth but that R.B. was the one in possession and was attempting to sell it.
¶ 10. On the basis of this incident, the alternative school’s principal recommended a one-year expulsion for R.B. R.B. received notice of the Appeals Committee hearing. This time, R.B. spoke on his own behalf, as D.L.B. was unable to attend. The Appeals Committee adopted the principal’s recommendation of a one-year expulsion, and the matter was transferred to the School Board.
¶ 11. R.B. and D.L.B. did not receive notice of the School Board hearing. They knew, from previous experience, when the School Board met and happened to hear that R.B.’s case was being heard on the *499 evening of June 10, 2004. When R.B. and D.L.B. arrived at the School Board hearing, they were not given an opportunity to be heard. D.L.B. testified that when he asked to see the evidence against his son, particularly the statements from the other students, he was denied the opportunity even to view the statements because the School Board required that the identities of those students be kept confidential. The School Board upheld the Appeals Committee’s recommendation for a one-year expulsion. R.B. and D.L.B. received notice of the expulsion via letter dated June 11, 2004.
¶ 12. On April 8, 2004, following the initial order of expulsion regarding the incident with the nail file device, R.B. and D.L.B. appealed the School Board’s decision to the Hinds County Chancery Court. When R.B. was expelled from the alternative school in June 2004, R.B. and D.L.B. amended their appeal to include the marijuana possession incident.
¶ 13. The chancellor held a hearing on February 8, 2005, which was continued until October 5, 2005. Following the hearing, the chancellor overturned both expulsions. With regard to the incident involving the nail file device, the chancellor found that the School Board’s decision was arbitrary and capricious and not supported by substantial evidence due to the School Board’s utter failure to inspect the nail file device and to make an independent determination regarding the classification of the device as a weapon. With regard to both the nail file device and the marijuana incidents, the chancellor held that the School Board violated R.B.’s due process rights. The chancellor reversed the expulsions and ordered R.B.’s record expunged.[2]
¶ 14. The Hinds County School District Board of Trustees appealed. The School Board argues that the chancellor erred in finding that both of the School Board’s disciplinary decisions regarding R.B. were arbitrary and capricious, unsupported by substantial evidence, and in violation of R.B.’s constitutional rights.
STANDARD OF REVIEW
¶ 15. A school board is an administrative agency to which certain powers and duties have been delegated, including the responsibility of conducting the final review on student disciplinary matters. Loftin v. George County Bd. of Educ., 183 So.2d 621, 622 (Miss.1966); Miss.Code Ann. § 27-7-301(e) (Supp.2006). In reviewing the decision of a chancellor regarding an agency decision, this Court will affirm the agency decision unless that decision “(1) was unsupported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the power of the administrative agency to make; or (4) violated some statutory or constitutional right of the complaining party.” Mississippi Sierra Club v. Mississippi Dep’t of Envtl. Quality, 819 So.2d 515, 519(¶ 15) (Miss. 2002).
ANALYSIS
1. Disciplinary proceedings regarding the nail file device incident
¶ 16. The School Board argues that the decision to uphold the Appeals Committee’s recommendation to suspend R.B. for possession of a weapon was supported by substantial evidence. The School Board argues that the Appeals Committee had the report of the school’s security officer, which described the nail *500 file device as a “pocket knife, thereby providing the Appeals Committee with substantial evidence to suspend R.B. for possession of a knife. The School Board then argues that it received the report of the Appeals Committee and that the Appeals Committee’s report constituted substantial evidence. The School Board argues that its decision is further supported by the faxed photocopy purporting to represent the nail file device at issue.
¶ 17. In order to reverse the chancellor’s decision to reverse the expulsion for possession of a weapon, the School Board must show that its decision to expel R.B. was supported by substantial evidence and was not arbitrary and capricious. Those terms are defined as follows:
Substantial evidence, though not easily defined, means something more than a “mere scintilla” of evidence, Johnson v. Ferguson, 435 So.2d 1191 (Miss.1983) and that it does not rise to the level of “a preponderance of the evidence.” Babcock & Wilcox Co. v. McClain, 149 So.2d 523 (Miss.1963). It may be said that it “means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred.” State Oil & Gas Bd. v. Mississippi Min. & Roy. Own. Ass’n, 258 So.2d 767 (Miss.1971); United States v. Harper, 450 F.2d 1032 (5th Cir.1971); Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991). When an administrative agency’s decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious and an administrative agency’s decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone. An action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles. Miss. State Dep’t of Health v. Natchez, 743 So.2d 973, 977 (Miss.1999); See also Burks v. Amite County Sch. Dist., 708 So.2d 1366, 1370 (Miss.1998).
Miss. Dep’t of Human Servs. v. McNeel, 869 So.2d 1013, 1018 (¶¶ 19-20) (Miss. 2004). In R.B.’s case, both the decision of the Appeals Committee and the decision of the School Board were unsupported by the evidence and were arbitrary and capricious.
¶ 18. D.L.B. testified that the Appeals Committee did not conduct any real inquiry into the situation regarding the nail file device. Principal Campbell was present at the hearing but did not make a statement. Rather, he simply submitted a written report drafted by the school’s security officer as evidence of R.B.’s possession of a weapon. Campbell also submitted R.B.’s disciplinary record to support the recommendation of expulsion for one year. D.L.B. was permitted to make a statement to the Appeals Committee, but the written report was the only evidence to support the charge that R.B. possessed a weapon.
¶ 19. Glenn Wilkerson, the hearing officer in charge of the Appeals Committee, testified on cross-examination that the nail file device, the alleged weapon, was not made available for the Appeals Committee to review:
And was there evidence presented by the School district regarding the nail file at the meeting [of the Appeals Committee]? &
About the nail file, yes. <d
Yes. So you saw an actual nail file. &
I didn’t see the actual nail file at the initial hearing, no. <¡
*501 Q: So, that I’m clear, you did not see a nail filer or any evidence presented by the School District at the initial hearing.
A: Right.
The Appeals Committee based its decision to expel R.B. and send him to an alternative school solely on the written report of the school’s security officer, which described the device as a “pocket knife.”
¶20. The School Board considered no additional evidence in its evaluation of the matter. Wilkerson testified that he presented the results of the Appeals Committee hearing to the School Board. D.L.B. testified that he was not allowed to be present for the entire meeting but was brought into the room after the presentation of any evidence against R.B. According to D.L.B., the School Board gave him five minutes to present his case. D.L.B. produced a fingernail clipper and told the School Board that it was similar to the device that his son had and that his son did not, in fact, possess a knife.
¶ 21. Upon hearing this contradictory evidence, the School Board determined that it would like to see the device. Again, however, the school failed to produce the nail file device for examination at the hearing. The School Board ultimately determined that the school would produce the device to the superintendent, and, if the device was a knife, the School Board would uphold the Appeals Committee’s recommendation for R.B.’s expulsion and attendance at the alternative school.
¶ 22. The following morning, the superintendent received a facsimile from Byram Middle School which contained a photocopy of a device that appeared to be a knife. The superintendent then faxed a copy of that document to D.L.B. and told him that the School Board had decided to uphold the Appeals Committee’s recommendation to expel R.B. and send him to the alternative school.
¶ 23. The Court finds that the School Board’s decision was arbitrary and capricious and not supported by substantial evidence. The School Board relied solely on the report from the Appeals Committee and a faxed photocopy of an item purporting to be the “knife” found on R.B. The findings of the Appeals Committee are themselves deficient, as the Appeals Committee chose to rely on the written report characterizing the device as a “pocket knife” without examining the device themselves.
¶ 24. The School Board similarly abdicated its responsibility. The testimony in the record indicates that the School Board opted to place the final decision in the hands of the superintendent, in violation of Mississippi Code Annotated Section 27-7-301(e), which provides that the School Board must make the final determination on disciplinary matters. The superintendent received the photocopy and made the determination that the nail file device was a knife. Even if the School Board could have placed its power to make the ultimate decision regarding the disciplinary action in the superintendent, her decision to expel R.B. by relying solely upon the report from the Appeals Committee and a faxed photocopy of an item that did not match the description given by D.L.B. was arbitrary and capricious.
¶ 25. D.L.B. testified that he was outraged when he received the facsimile from the superintendent because the item did not resemble at all the nail file device that R.B. was found carrying. Having reviewed both facsimile photocopies and the actual device, this Court agrees. D.L.B. advised the Appeals Committee and the School Board that the item was a three-pronged nail file device. The Appeals Committee did not even attempt to view *502 the device. The School Board’s response was no better, as it permitted the superintendent to rely upon a facsimile document that displayed only one prong of the nail file device.
¶ 26. The Court has had the opportunity to examine the device as part of its review of the record. Having viewed the device, it is clear that the School Board’s decision to render a final decision without viewing the device was arbitrary and capricious. Had the School Board examined the device, it would have been able to determine that the device was not a “pocket knife,” as stated by the school’s security officer. Thereafter, the School Board could have used its discretion to determine whether the device could otherwise be categorized as a “weapon,” as defined by Mississippi Code Annotated Section 37-11-18, or whether the device was exactly what R.B. and D.L.B. claimed it to be — an unaltered nail file, which by definition in the school district’s own handbook, is a permitted device. The facsimile copy attached to the School Board’s letter upholding the suspension is misleading, as only one prong of the device — the prong that most resembles a blade — is displayed. More disturbing, though, is the facsimile copy that D.L.B. received, which depicts the device at approximately three times its actual size.
¶ 27. Had the School Board conducted even a cursory examination of the actual device, it would have realized that the Appeals Committee’s recommendation, which was based solely upon the written report of the school’s security officer, did not constitute substantial evidence upon which to discipline R.B. for possession of a weapon. The decision of the School Board not to examine the device itself constitutes a dereliction of the School Board’s duty to render decisions supported by substantial evidence. To take the word of the Appeals Committee, which was based solely upon the written report of the school authorities who sought R.B.’s expulsion, and a facsimile photocopy of a device that the School Board did not even view is a textbook example of an arbitrary and capricious decision.
¶ 28. Accordingly, this Court holds that the chancellor correctly determined that the School Board’s decision to expel R.B. for possession of a weapon was unsupported by substantial evidence and was, therefore, arbitrary and capricious. The chancellor’s decision to reverse the School Board’s disciplinary action against R.B. for possession of a weapon is affirmed.
2. Disciplinary proceedings regarding the marijuana incident
¶ 29. The School Board argues that the evidence of the possession of marijuana was sufficient to support the School Board’s decision to expel R.B. for one year. The School Board also contends that R.B. received proper due process under the law or, alternatively, that even if he did not receive due process, that he was not substantially prejudiced.
¶ 30. A student facing disciplinary action is entitled to procedural due process because the potential loss of the ability to attend school and receive an education impacts a student’s property rights. See Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Goss provides that for short-term suspensions, defined by the United States Supreme Court as ten days or less, a student should be provided with “oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.” Id. at 580, 95 S.Ct. 729. The Court noted, however, that “[ljonger suspensions or expulsions for the remainder of the school term, or permanently, *503 may require more formal procedures. Nor do we put aside the possibility that in unusual situations, although involving only a short suspension, something more than the rudimentary procedures will be required.” Id. at 584, 95 S.Ct. 729.
¶ 31. Mississippi follows Goss and has determined that in some situations, more than minimal due process is required. In Jones v. Board of Trustees, 524 So.2d 968 (Miss.1988), the Mississippi Supreme Court held that ordinarily a student should be provided with a list of witnesses. Jones, 524 So.2d at 973 (applying Keough v. Tate County Bd. of Education, 748 F.2d 1077, 1083 (5th Cir.1984)). Jones also acknowledges that “how much process is due depends on the particular circumstances.” Based on the circumstances of this case, R.B. was denied procedural due process at both the Appeals Committee level and at the School Board level.
1132. The letter of notice of hearing for the Appeals Committee meeting on the marijuana incident is included in the record. That letter provides that R.B. was entitled not only to a meaningful opportunity to be heard at the Appeals Committee hearing but also with the right “to cross-examine or otherwise pose questions to persons giving statements adverse to the student.” The Appeals Committee received evidence in the form of written statements from the other students involved in the incident who placed the blame on R.B. Not only was R.B. not allowed to pose questions to these students, who were not present at the hearing, the Appeals Committee advised D.L.B. that R.B. had no right to even know the names of those students who accused him.[3] Accordingly, regardless of whether R.B. received the minimal due process to which he was entitled as a matter of course, he was deprived of the additional due process protections which the Appeals Committee guaranteed him. See Warren County Bd. of Educ. v. Wilkinson, 500 So.2d 455 (Miss.1986) (holding that where a school board guaranteed a student the opportunity to cross-examine the witnesses against her, failure to provide witnesses constituted a deprivation of procedural due process).
¶ 33. In addition to the due process deprivation at the Appeals Committee level, R.B. received absolutely no notice of the June 10, 2004, School Board hearing in which the School Board was to review the Appeals Committee’s recommendation of expulsion for one year and render a final decision on the disciplinary proceeding. D.L.B. testified that he had no knowledge of what transpired at the School Board meeting:
I don’t think that there was any testimony at the meeting because — I don’t know. The actual board meeting, I didn’t even — I wasn’t on the agenda for the board meeting. And the first time, they sent me a letter. I guess I was on the agenda, and they told me when to come for the School Board hearing. And on the second one, I didn’t get a letter, but we just went anyway, because I knew that they were meeting that Thursday. And since we weren’t on the agenda then, the board might have met about it, but we didn’t meet with them because we weren’t on the agenda so, of course, we weren’t able to go in and *504 meet with them. But then I did get this letter, I guess about a week later, that told me that they had upheld Mr. Stewart’s decision or the committee’s decision.
Due process, as well as R.B.’s first experience with the School Board, required that R.B. be provided with, at a minimum, “notice and an opportunity to be heard.” Jones, 524 So.2d at 972. He received neither notice nor an opportunity to be heard.
¶ 34. Additionally, the Court also notes that R.B. was facing more than a short suspension. He was facing expulsion for a calendar year. A one-year expulsion is precisely the type of protracted deprivation of property rights with which the Supreme Court was concerned in Goss and which should require more than the minimal procedural due process protections of notice and a right to be heard.
¶ 35. The Court finds that the chancellor was correct in concluding that R.B. was deprived of his constitutional rights and failed to receive procedural due process. Accordingly, this Court affirms the chancellor’s order reversing R.B.’s expulsion from the alternative school for possession of marijuana.
¶ 36. The dissent notes a concern that the chancellor conducted a full hearing with live testimony. After noting that concern, the dissent acknowledges that there was no objection to that process, so that the testimony taken before the chancellor is a part of the record for this Court’s consideration.
¶ 37. Where a chancellor receives testimonial evidence, he/she sits as the trier of fact, and where supported by the record, this Court must defer to the findings of fact made by that chancellor. Stokes v. Campbell, 794 So.2d 1045, 1048(¶ 11) (Miss.Ct.App.2001). Inherent in sitting as the trier of fact is the responsibility to make determinations regarding the credibility of witnesses. Id. The dissent would seem to attempt to decide the issue of credibility of the various witnesses, and in so doing, make its own findings of fact. This Court is not permitted to do.
¶ 38. The dissent suggests that because the School Board lacks subpoena power, it can not be faulted for its failure to even attempt to have available at a hearing all of the witnesses upon whose testimony it would base a decision. Such a remark is not well grounded in reason. In most student discipline hearings, the witnesses are either school employees or other students. To suggest that the School Board could not insure that its employees were present for a hearing is at best incredulous. While the School District perhaps has less control over getting students to appear, that lessen control does not relieve the District of the responsibility to make a good faith effort to have the students available, where accepts their secondhand testimony as a basis for its actions. There is nothing in the record before this Court, which suggests any effort, good faith of otherwise, was attempted to have the students available for a hearing.
¶ 39. This failure is of particular concern since the School District informed the student that he had a right “To cross-examine or otherwise pose questions to persons giving statements adverse to the student.” If the District fails to make any effort whatsoever to have available for cross-examination the persons whose adverse testimony it intends to use as support for its decision, the promise of due process, as stated by the District’s letter, is a nullity
¶ 40. The dissent finds no abdication of responsibility by the school board in allowing the superintendent to view the item and make a determination as to *505 whether the item was in fact a knife and then impose punishment. The school board, and not the superintendent, has the duty to act as fact finder. That duty is not subject to delegation. During the course of argument, counsel for the school board acknowledged that the duty to determine whether the item was a knife had been delegated to the superintendent. When the school board delegated that duty it of necessity delegated the determination of punishment. Such an action is arbitrary and capricious.
¶ 41. The dissent, as a part of its effort to find that the student was given due process, would have this Court hold that a student is only entitled to a listing of student witnesses if school policy requires it. As support for this position, the dissent looks at a limited portion of the relevant discussion in Jones v. Pascagoula Mun. Sep. Sch. Dist., 524 So.2d 968, 973 (Miss.1988). A full reading of the relevant discussion belies that suggestion.
¶ 42. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING, CHANDLER, BARNES, AND ISHEE, JJ., CONCUR. ROBERTS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE AND MYERS, P.JJ., and GRIFFIS AND CARLTON, JJ.

. Ordinarily, juveniles are required to spend the night at the juvenile detention center. D.L.B. stated that he was able to take R.B. home within thirty minutes of his arrival because the center did not want to hold him for possession of a weapon after learning the facts of the. situation.

. The chancellor ruled that R.B. was not entitled to monetary damages due to his failure to file a notice of claim under the Mississippi Tort Claims Act. Miss.Code Ann. § 11-46-11 (Rev.2002).

. In this case, R.B. knew the names of the students involved, as they were also questioned by the principal at the time of the incident. As counsel for R.B. pointed out during oral argument, however, once R.B. was removed from the alternative school, he had no means of contacting these students, and simply knowing their names did not provide R.B. with the means necessary to ensure their presence at the hearing so that R.B. could question them regarding their statements.