ON WRIT OF CERTIORARI

CARLSON, Justice, for the Court.
¶ 1. The Hinds County School District Board of Trustees (School Board) filed a *390 petition for writ of certiorari pursuant to Mississippi Rule of Appellate Procedure 17 after the Court of Appeals’ issuance of a plurality opinion affirming the judgment of the Hinds County Chancery Court to reverse and expunge the School Board’s decision to expel R.B. from Byram Middle School and the Main Street Alternative School. At the trial court level, the chancery court had ruled that the School Board’s removal of R.B. from Byram Middle School due to his possession of a prohibited device and the School Board’s subsequent decision to expel R.B. from the Alternative School for drug possession were arbitrary and capricious and unsupported by substantial evidence, resulting in substantial prejudice to R.B. The chancery court had further found that the substantial prejudice caused by the School Board’s procedures resulted in a denial of R.B.’s right to due process. The chancery court had ordered that the School Board’s disciplinary actions be expunged from R.B.’s record. The School Board appealed, and the Court of Appeals, in a five-five plurality opinion, affirmed the chancery court’s judgment. Upon our grant of certiorari, the American Civil Liberties Union and the American Civil Liberties Union of Mississippi (hereinafter collectively the “ACLU”) filed a Motion for Leave to File Brief of Amicus Curiae, which motion we in due course granted; therefore, in addition to the briefs of the parties, we now have before us for consideration, the ACLU’s amicus brief which was filed pursuant to our order.[1] From the record before us and the applicable law, we are constrained to reverse the judgments of the Court of Appeals and the Chancery Court for the First Judicial District of Hinds County and to render judgment here in favor of the Hinds County School District Board of Trustees.
PROCEEDINGS IN THE TRIAL COURT AND RELEVANT FACTS[2]
¶ 2. R.B., a minor, by and through his next friend, D.L.B., appealed the Hinds County School District Board of Trustees’ decision to expel R.B. from Byram Middle School and to place him at the Alternative School for the remainder of the 2004 school year and for the first nine weeks of the following 2004-2005 school year. The expulsion was a result of R.B. possessing what was deemed by the principal, superintendent, and the School Board to be a knife-in violation of school policy and Mississippi Code Annotated section 97-37-17(4).[3] The appeal to the Hinds County *391 Chancery Court was subsequently amended to include R.B.’s May 2004 expulsion from the Alternative School for possession of marijuana. The Chancery Court for the First Judicial District of Hinds County, Chancellor Patricia D. Wise presiding, conducted a hearing in chancery court on February 8, 2005, recessed that hearing, and then concluded the hearing on October 5, 2005. The chancellor reversed the expulsions and ordered them expunged from R.B.’s record.
¶ 3. R.B. was a student at Byram Middle School. On February 5, 2004, R.B. was summoned to the principal’s office due to another student’s report that R.B. was selling drugs on campus. Principal Campbell obtained R.B.’s consent and searched his backpack. This search resulted in the discovery of contraband, namely an instrument that has been described as both a nail file and a knife. R.B.’s father, D.L.B., was notified. Principal Campbell requested that D.L.B. assist in an additional, more invasive search that would involve the removal of R.B.’s clothing.[4] D.L.B. refused this request. R.B. was subsequently arrested and taken to the detention center, where he was released into D.L.B’s custody.[5] As a result of this incident, Principal Campbell recommended that R.B. be expelled from Byram Middle School for one calendar year. The Hinds County School District Admission Appeals Committee[6] held a hearing on February 17, 2004, at which R.B. was allowed to argue on his own behalf. R.B., by and through his next friend, D.L.B., responded to the allegations. The Appeals Committee also read statements from Principal Campbell and the school resource officer, and also viewed a photocopy of the instrument at issue. The Appeals Committee voted to expel R.B. for the remainder of the year and to put him on probation for the next school year. D.L.B. appealed this decision to the Hinds County School District Board of Trustees (the “School Board”).
¶ 4. On March 10, 2004, the School Board reviewed the Appeals Committee’s decision. D.L.B. gave a statement to the School Board, citing the School Safety Law and Policy Development Handbook in defense of his position that the instrument was an unaltered nail file, not a weapon. For reasons unknown, the actual instrument at issue was not available for examination by the School Board. D.L.B., according to his testimony, presented School Board members with an instrument that he described as identical to the one confiscated from R.B. The School Board assigned the superintendent the task of determining whether the device was a weapon. On March 12, 2004, based on a photocopied depiction of the instrument, the superintendent determined the instrument in question to be a knife in violation of school policy and Mississippi Code Annotated Section 97-37-17(4) (Rev. 2006). Based on this determination, the School Board upheld the Appeals Commit *392 tee’s decision, and R.B. was placed at the Alternative School.
¶ 5. On May 19, 2004, while at the Alternative School, R.B. was accused of possession of marijuana. The marijuana was found in a classroom on a bookshelf near R.B. by an investigative officer. R.B. signed a written statement indicating that another student, J.D., had tossed the marijuana at him and that he had thrown it onto the bookshelf. Two students, including J.D., signed statements that the drugs belonged to R.B., and D.L.B. was again notified and summoned to the school. The Alternative School principal, Bob Mohr, recommended a one-year expulsion. D.L.B. appealed the expulsion to the Appeals Committee. R.B received written notice of the Appeals Committee hearing. This notice stated that R.B. and D.L.B. had the right to protest the expulsion and the hearing, and the notice further stated:
(1) A full statement of the charges lodged against the student is as follows: admitting to possession of a controlled substance and attempting to conceal and sell it;
(2) The names of all persons who are expected to offer statements against the student: Mr. Sheridan Stewart, Mr. Bob Mohr, Mr. Kelvin Mixon.
¶ 6. The notice also provided “[ejach of you shall also have the right:”
(1) To have counsel present at the hearing;
(2) To cross-examine or otherwise pose questions to persons giving statements adverse to the student: To offer statements by the student and parent(s) or guardian and any other person who has information relevant to the charges advanced by the Administrative head of the Main Street Alternative School.
¶ 7. At this hearing, R.B. spoke on his own behalf. The Appeals Committee also considered five signed statements by students indicating that R.B had been in possession of marijuana. In the end, the Appeals Committee accepted Mohr’s recommendation for expulsion.
¶ 8. The School Board met on June 10, 2004, and, after reviewing the evidence considered by the Appeals Committee, affirmed R.B.’s expulsion. D.L.B. later testified at the chancery court hearing that he did not give a statement at this School Board meeting due to not having received notice of the hearing. Instead, according to D.L.B., he received a letter from the School Board after the meeting, informing him that the expulsion for one calendar year had been affirmed.[7] D.L.B. appealed both School Board decisions as to the two separate disciplinary actions, and the chancery court reversed the School Board’s decisions concerning both disciplinary actions and ordered that these disciplinary actions be expunged from R.B.’s school records.
PROCEEDINGS IN THE COURT OF APPEALS
¶ 9. The School Board appealed the chancery court’s decision to reverse R.B.’s expulsion and to expunge his disciplinary record. The School Board presented the following questions to the Court of Appeals for review:
(1) Was the decision of the Hinds County School District (the “District”) Board of Trustees to expel R.B. from Byram Middle School for the remainder of the school year for possession of a knife or *393 dangerous implement on school grounds unsupported by substantial evidence, arbitrary and capricious, or in violation of the statutory or constitutional rights of R.B.?
(2) Was the decision of the Board to expel R.B. from the District for one calendar year for possession of marijuana unsupported by substantial evidence, arbitrary and capricious, or in violation of the statutory or constitutional rights of R.B.?
The Court of Appeals, in a five-five plurality opinion, affirmed the chancery court’s decision. Hinds County Sch. Dist. v. R.B., 10 So.3d 495, 497, 2007 WL 2702819 (Miss.Ct.App.2007).
¶ 10. As to R.B.’s Alternative School placement for possession of a weapon, the Court of Appeals affirmed the chancellor’s decision to reverse based on its conclusion that the School Board’s decision was unsupported by substantial evidence, and, therefore, arbitrary and capricious. Id. at 502, ¶ 27. The plurality interpreted Mississippi Code Annotated Section 37-7-301(e) (Rev.2007) to require the School Board to view the knife and make its own factual findings instead of delegating such authority to the superintendent. Id. at 501-02, ¶¶ 24-25. Additionally, the Court of Appeals noted that a cursory inspection of the instrument in question would have revealed that it was an unaltered nail file, as described by D.L.B., and not in violation of Hinds County policy. Id. at 502, ¶ 27. The plurality opinion stated:
The Court has had the opportunity to examine the device as part of its review of the record. Having viewed the device, it is clear that the School Board’s decision to render a final decision without viewing the device was arbitrary and capricious. Had the School Board examined the device, it would have been able to determine that the device was not a “pocket knife,” as stated by the school’s security officer.
Id. at 502, ¶ 27.
¶ 11. As to the possession-of-marijuana charge, the plurality affirmed the chancellor’s decision to reverse, finding that R.B.’s right to due process had been violated at both the Appeals Committee and School Board levels. Id. at 503, ¶ 31. The plurality opinion relied on Warren County Board of Education v. Wilkinson, 500 So.2d 455 (Miss.1986), in determining that R.B. had been deprived of the additional due process guarantees, namely the right to confront witnesses and the right to cross-examine witnesses, as provided for in the notice he received regarding the Appeals Committee hearing. Id. at 503, ¶ 32. Concerning the issue of lack of opportunity for R.B. to confront his accusers, the plurality stated:
The Appeals Committee received evidence in the form of written statements from the other students involved in the incident who placed the blame on R.B. Not only was R.B. not allowed to pose questions to these students, who were not present at the hearing, the Appeals Committee advised D.L.B. that R.B. had no right to even know the names of those students who accused him. Accordingly, regardless of whether R.B. received the minimal due process to which he was entitled as a matter of course, he was deprived of the additional due process protections which the Appeals Committee guaranteed him. See Warren County Bd. of Educ. v. Wilkinson, 500 So.2d 455 (Miss.1986) (holding that where a school board guaranteed a student the opportunity to cross-examine the witnesses against her, failure to provide witnesses constituted a deprivation of procedural due process).

Id.

¶ 12. In reliance on Jones v. Board of Trustees, 524 So.2d 968 (Miss.1988), the *394 plurality determined that the School Board had deprived R.B. of notice and the opportunity to speak on his own behalf when the school district failed to notify R.B. of the June 10, 2004, school board meeting, at which the final decision to expel was made. Thus, according to the plurality opinion, the School Board had deprived R.B. of the requisite minimal due process. Id. at 503, ¶ 33.
¶ 13. In addressing both of these issues, the Court of Appeals dissenting opinion refused to find that the School Board’s decisions were unsupported by substantial evidence or resulted in substantial prejudice to R.B. Judge Roberts’s dissent, which was joined by four other judges, noted that, due to the School Board’s decision being an administrative decision, the chancellor should have conducted a limited review of the decision based solely on the record, but instead, the chancellor wrongly admitted additional evidence and exhibits. Id. at 505, ¶ 44. The dissent interpreted Mississippi Code Annotated Section 37-7-301(e) as authorizing school boards to delegate disciplinary matters to school administrators so long as school boards made the final determination as to the issue of expulsion. Id. at 508, ¶ 58. Additionally, the dissent agreed with the School Board’s argument that there was no case law on point requiring a school board to examine the actual “weapon.” Id. at 509, ¶ 63.
¶ 14. As to the marijuana-possession allegation, the dissent pointed to R.B.’s “quasi confession” that he had possessed of the marijuana “if only for a brief time.” Id. at 511, ¶ 71. The dissent rejected the plurality’s findings of a due process violation based on R.B.’s notice and opportunity to appear at the Appeals Committee hearing. Id. at 511-12, ¶ 72. The dissent dismissed the plurality’s contention that R.B. was entitled to cross-examine the student witnesses based on the following reasoning:
[T]he School Board does not have the power to compel student attendance at a hearing. Jones, 524 So.2d at 973. See also Miss. Code Ann. § 37-7-301. If the School Board does not have subpoena power then there can be no right to compulsory process for the witness and hence no right of confrontation. Absent subpoena power, it is clearly reasonable for the Appeals Committee to rely on written reports and written statements from witnesses.
Id. at 513, ¶ 78.
¶ 15. We now consider these issues presented via the School Board’s petition for writ of certiorari.
DISCUSSION
¶ 16. We begin the discussion by stating that we agree with Judge Roberts’s dissent in that an appellate review of this administrative decision should not have gone beyond the record. Id. at 505, ¶ 44 (citing Miss. State Tax Comm’n v. Miss.Ala. State Fair, 222 So.2d 664, 665 (Miss.1969)). However, because neither party objected to additional fact-finding by the chancellor, this Court must consider the additional evidence as part of the record pursuant to Mississippi Rule of Appellate Procedure 17(h).
¶ 17. An appellate review of an agency decision is a limited inquiry. “When this Court reviews a decision by a chancery or circuit court concerning an agency action, it applies the same standard of review that the lower courts are bound to follow.” Miss. Sierra Club, Inc. v. Miss. Dep’t of Envtl. Quality, 819 So.2d 515, 519 (Miss.2002) (citing Miss. Comm’n on Envtl. Quality v. Chickasaw County Bd. of Supervisors, 621 So.2d 1211, 1216 (Miss.1993)). This Court reviews an administrative agency decision to determine *395 whether the decision (1) was unsupported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party. Id. (citing Miss. Comm’n on Envtl. Quality, 621 So.2d at 1215). Where there is substantial evidence, “an agency’s fact finding must be allowed to stand ‘even though there might be room for disagreement on that issue’.” Miss. Public Service Comm’n v. Merchants Truck Line, Inc., 598 So.2d 778, 782 (Miss.1992) (quoting Babcock & Wilcox v. Roby, 246 Miss. 160, 150 So.2d 129, 130 (1963)). Furthermore, “[m]atters of law will be reviewed de novo, KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss.1991), with great deference afforded an administrative agency’s ‘construction of its own rules and regulations and the statutes under which it operates’.” McDerment v. Miss. Real Estate Comm’n, 748 So.2d 114, 118 (Miss.1999) (quoting Miss. State Tax Comm’n v. Mask, 667 So.2d 1313, 1314 (Miss.1995)).
¶ 18. The School Board asserts four points of error by the plurality of the Court of Appeals[8] for our review: (1) the standard of review applied by the Court of Appeals was contrary to the law; (2) the plurality’s decision conflicts with prior precedent governing due process in public school disciplinary matters; (3) the plurality erroneously applied and ignored the plain language of Mississippi Code Annotated Section 37-7-301(e); and (4) the plurality erroneously required the physical examination of the “weapon” where no law requires the physical examination of dangerous and/or potentially illegal devices prior to administering student discipline. In the course of our discussion, we will address Issues (3) and (4) together, as they both involve the authority of school boards to delegate disciplinary matters.
I. WHETHER THE PLURALITY IMPROPERLY SUBSTITUTED ITS JUDGMENT FOR THAT OF THE DISTRICT IN DETERMINING THAT THE BOARD’S DECISION WAS ARBITRARY AND CAPRICIOUS, AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 19. The School Board contends that the Court of Appeals plurality improperly substituted its judgment for that of the School Board by making a factual finding regarding the nature of the object seized from R.B. In doing so, the School Board argues that the Court of Appeals’ affir-mance of the chancellor’s ruling went beyond the arbitrary-and-capricious review standard.
¶ 20. A decision cannot be arbitrary and capricious where there is substantial evidence to support its factual basis. See Miss. Dep’t of Human Servs. v. McNeel, 869 So.2d 1013 (Miss.2004). This Court has defined substantial evidence as follows:
Substantial evidence, though not easily defined, means something more than a “mere scintilla” of evidence, Johnson v. Ferguson, 435 So.2d 1191 (Miss.1983), and that it does not rise to the level of “a preponderance of the evidence.” Babcock & Wilcox Co. v. McClain, 149 So.2d 523 (Miss.1963). It may be said that it “means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is *396 substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred.” State Oil & Gas Bd. v. Mississippi Min. & Roy. Own. Ass’n, 258 So.2d 767 (Miss.1971); United States v. Harper, 450 F.2d 1032 (5th Cir.1971).
McNeel, 869 So.2d at 1018 (quoting Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991)).
The arbitrary-and-capricious standard has been defined by this Court to mean:
When an administrative agency’s decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious[,] and an administrative agency’s decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone. An action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles.
McNeel, 869 So.2d at 1018 (quoting Miss. State Dep’t of Health v. Natchez, 743 So.2d 973, 977 (Miss.1999); see also Burks v. Amite County Sch. Dist., 708 So.2d 1366, 1370 (Miss.1998)).
¶ 21. The Court of Appeals plurality took issue with the scale of the photocopy and the fact that the superintendent and the school board viewed a photocopy of the instrument and not the actual instrument which had been seized. The Court of Appeals judges who comprised the plurality viewed the actual instrument and determined that the device was not a knife, but an unaltered nail file, as described by D.L.B. However, from the record and the applicable law, it is obvious that the plurality, contrary to the factual findings of the School Board, substituted its own judgment for that of the School Board. This Court respectfully disagrees with the plurality’s findings as to the seized weapon. The record reveals that there exists a reasonable basis to conclude that the object in question was a knife, as categorized by Principal Campbell and the school resource officer present at the time the instrument was confiscated.
¶ 22. The School Board, in reaching its decision that the seized object was a knife, relied upon the Appeals Committee’s recommendation; the descriptions of the object by the principal, school resource officer, and superintendent; a photocopy of the object; D.L.B.’s oral arguments and written statement on behalf of R.B.; and the instrument that D.L.B. presented to the School Board during the hearing and described as identical to the one confiscated from R.B. From the record, it is clear that the School Board’s decision was based on substantial evidence. Since this case involves a review of an administrative agency’s finding, where there is substantial evidence a factual finding should stand “even though there might be room for disagreement on that issue.” Merchants Truck Line, Inc., 598 So.2d. at 782 (quoting Babcock & Wilcox, 150 So.2d at 130).
¶ 23. The dissent takes issue with the fact that the photocopy of the device depicted only one prong. Dissent at ¶ 52. As Judge Roberts stated in his dissent for the Court of Appeals, the “obvious and reasonable explanation” for this was that “the photocopied component was the only component alleged to be a knife.” Hinds Co. Sch. Dist. v. R.B., 10 So.3d 495, 509 (Miss.Ct.App.2007). The dissent further pointed to testimony by D.L.B. that this device was “part of a manicure set” belonging to the child’s mother. Dissent at ¶ 46. However, the dissent ignored R.B.’s testimony wherein he admitted that he considered this device a “knife” — describing it as his “slicer” that he used for *397 cutting boxes. As Judge Roberts pointed out the in Court of Appeals dissent, there are three prongs on the instrument — two of which are clearly a can opener and a nail file; however, “[t]he fact that the implement contains a nail file does not exempt it from being a weapon if it has other dangerous components.” R.B., 10 So.3d at 509.
¶ 24. While a cursory inspection of the knife component may indeed reveal that the “weapon” does not appear menacing, the role of this Court is limited to determining whether there exists a reasonable basis for school officials to find that it could potentially cause harm to other students. The dissent would have us ignore our role and substitute the judgment of this Court for that of the School Board; however, where a reasonable factual basis for the charge exists, the School Board was within its discretion to strictly apply and construe its own policies as to what constituted a weapon and what punishment was appropriate. As this Court has stated, “While it is true that there are many punishments that would seem less harsh or more appropriate in this case, we must recognize that the law commits this entire matter to the discretion of the school board.” Covington County Sch. Dist. v. G.W., 767 So.2d 187, 192 (Miss.2000) (quoting Clinton Mun. Separate Sch. Dist. v. Byrd, 477 So.2d 237, 242 (Miss.1985)).
¶ 25. For the reasons stated, we respectfully disagree with the findings of both the Court of Appeals and the Hinds County Chancery Court that the instrument in question was a nail file. These findings ignored the findings of the School Board and the school administrators that the instrument was a “weapon.” The School Board understandably argues before us that if the Court of Appeals decision is allowed to stand, “school boards will be left with little, if any, confidence that its discretionary decisions are not subject to reversal merely because a trial court and/or appellate court disagrees. Such a ruling will have a chilling effect on school boards as well as unnecessarily increase the amount of litigation regarding their decisions.”
¶ 26. We find that the School Board’s determination that R.B. was in possession of a weapon in violation of school policy and Mississippi Code Annotated Section 97-37-17(4) is supported by substantial evidence; therefore, we find that the School Board’s disciplinary action in this matter was not arbitrary or capricious and thus is beyond our authority to disturb because of our limited scope of review in administrative matters.
II. WHETHER THE COURT OF APPEALS DECISION CONFLICTED WITH PRIOR PRECEDENT GOVERNING DUE PROCESS IN PUBLIC SCHOOL STUDENT DISCIPLINARY MATTERS.
¶ 27. At issue here is the due process that should be afforded to public school students involved in disciplinary matters. The School Board contends that R.B. received all process due under the law; and, alternatively, even if he were deprived of due process, R.B. suffered no substantial prejudice as a result. The School Board further contends in its petition for writ of certiorari that the Court of Appeals’ affirmation of the chancery court’s ruling creates a heightened standard for due process that is not required under either the United States Constitution or the Mississippi Constitution, and does not conform with prior precedent regarding student disciplinary matters. R.B. argues that the lack of notice and opportunity to participate in the June 10, 2004, School Board hearing, as well as his not being provided with a list *398 of witnesses for the purpose of cross-examination, deprived him of due process and resulted in substantial prejudice to his defense.
¶ 28. The United States Supreme Court, in Goss v. Lopez, 419 U.S. 565, 581, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975), set forth the minimum due process requirement for students facing a short-term suspension as follows: “Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.” The Court further noted that longer suspensions or expulsions may require more formal procedures. Id. at 584, 95 S.Ct. 729. The Fifth Circuit Court of Appeals, in a case involving the long-term suspension of a student, acknowledged that: “The standards of procedural due process are not wooden absolutes. The sufficiency of procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved.” Keough v. Tate County Bd. of Educ., 748 F.2d 1077, 1081 (5th Cir.1984) (quoting Ferguson v. Thomas, 430 F.2d 852, 856 (5th Cir.1970)). This Court, in Jones v. Board of Trustees, 524 So.2d 968, 972 (Miss.1988), required a showing of “substantial prejudice” in order to prove a denial of due process.
¶ 29. Consistent with the United States Supreme Court’s decision in Goss, this Court, in Jones, 524 So.2d at 972, stated that notice and opportunity to be heard are minimal requirements of the Due Process Clause. In Jones, a student was accused of drug distribution on campus. Id. at 969. The accused student, having cross-examined two student witnesses, argued that her due process rights were violated by the school board because she was not provided a list of her other accusers or the right to cross-examine those accusers. Id. at 973. This Court found that no deprivation of procedural due process occurred. Id. As to providing an accused with a witness list, this Court explicitly stated, “Since how much process is due depends on the particular circumstances, a denial of a list of witnesses will not always amount to a prejudicial denial of due process. Particularly, this must be so with student witnesses, since a school board has not been given the power of subpoena.” Id. The Court found that there was no deprivation of Jones’s confrontation rights when testimony by school administrators alluded to other students who had made incriminating statements against Jones. Id. at 972-973. Furthermore, the Court noted that precedent has revealed that hearsay testimony by school employees is treated differently from that of students, and that admitting hearsay testimony by school employees does not violate a student’s right to due process. Id. at 973.
f 30. First, R.B. contends that his due process rights were violated because he lacked notice of the June 10, 2004, School Board meeting and was not given an opportunity to speak on his own behalf at this meeting. However, R.B. was given an opportunity to speak on his own behalf to the Appeals Committee. We agree with the School Board that R.B. was afforded the requisite notice and opportunity to speak on his own behalf at the Appeals Committee level of review. Although we acknowledge that Jones, in keeping with United States Supreme Court’s holding in Goss, requires both notice and the opportunity to be heard, we find no precedent indicating that R.B. was entitled to two full evidentiary hearings. There is nothing in *399 the record to suggest that the School Board’s policies and procedures allowed students more than one hearing. Therefore, R.B. is unable to meet the requisite showing of substantial prejudice where he was granted notice and an opportunity to speak on his own behalf at the Appeals Committee level. This Court, in turn, finds this argument to be without merit.
¶ 31. Secondly, R.B. contends Jones held that due process routinely warrants cross-examination of witnesses, and, at a minimum, receipt of a witness list. In support of this argument, the ACLU in its amicus brief contends that an opportunity for cross-examination should be afforded after weighing all the factors for determining the specific dictates of due process as promulgated by the United States Supreme Court in Mathews v. Eldridge:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The ACLU maintains that the private interest affected, the right to a public education, is a fundamental right under the Mississippi Constitution,[9] and as such, weighs heavily in favor of R.B. not being excluded from the educational system without heightened due process.
¶ 32. The School Board, as well as the Court of Appeals dissent, argue that Jones does not require school boards to produce student witnesses for the purpose of cross-examination, given the fact that school boards do not have subpoena power. The plurality of the Court of Appeals opined that the School Board’s notice-of-hearing letter by which R.B. was told that he would have the opportunity to cross-examine witnesses at the Appeals Committee hearing entitled him to cross-examine all witnesses; as such, the School Board’s failure to produce these witnesses constituted a violation of R.B.’s right to procedural due process. The plurality relied on Warren County Board of Education v. Wilkinson, 500 So.2d 455 (Miss.1986), in reaching the conclusion that where a school district’s own policy has created a right to more than a minimal amount of process, failure by the school district to provide such additional procedures results in a due process violation. We do not disagree with this premise, but it is inapplicable to today’s case.
¶ 33. Wilkinson involved a student who was allotted the maximum punishment— loss of credit for the entire semester — for consuming alcohol in her own home prior to attending school. Wilkinson, 500 So.2d at 456. In Wilkinson, the Warren County School District previously had adopted procedures for disciplinary matters that included a de novo hearing before the school boai'd, to which an accused student was entitled to notice, as well as an explanation of charges and penalties, the right to confront and cross-examine witnesses, the right to call witnesses, the right to counsel, and the right to request in writing the names of any witnesses testifying against the student. Id. at 460-61. This Court upheld the chancery court’s reversal of the expulsion on the basis that the *400 school district did not follow its own procedures, and the de novo hearing conducted by the school board “became no more than an inquiry and discussion.” Id. at 461. This Court distinguished Wilkinson’ in Jones. “In Wilkinson this Court intimated that a list of witnesses was necessary; however, there the school board’s own rules required that a witness list be given.” Jones, 524 So.2d at 973.
¶ 34. Concerning the marijuana allegation, R.B. did receive a list of potential witnesses in his notice of the Appeals Committee hearing. The letter reads as follows:
The names of all persons who are expected to offer statements against the student: Mr. Sheridan Stewart, Mr. Bob Mohr, Mr. Kelvin Mixon.
As noted in Jones, hearsay testimony by school administrators does not violate due process. The Appeals Committee’s review of hearsay statements given by Stewart, Mohr, or Mixon was not improper. Furthermore, we do not interpret the holding of Jones as requiring school boards in every case to compel attendance of student witnesses at disciplinary hearings for cross-examination, or even requiring full disclosure of those students providing school officials with information.
¶ 35. This Court acknowledged in Jones that the requisite amount of due process requires a case-by-case inquiry. A list of student witnesses and opportunity for cross-examination may be appropriate in some circumstances, such as in cases where school districts have explicitly provided for this right in their policies and handbooks. Unlike the plurality for the Court of Appeals, we do not equate the wording of the notice letter with pre-estab-lished school district policy as was the case in Wilkinson. To be precise, in Wilkinson, the school board adopted a procedure for a de novo hearing before the school board, and further provided that a student would be informed in writing of the charges against him, “the possible penalties therefor, that he will have the right to confront and cross-examine witnesses against him, his right to call witnesses in his own behalf, his right to be represented by counsel, and advise him that he may request in writing the names of the witnesses that may testify against him.” Wilkinson, 500 So.2d at 460-61. On the other hand, the wording of the notice in today’s case is considerably different from the wording of the notice in Wilkinson that was based on the school board’s adopted policy. Id. In fact, R.B. and D.L.B. were informed by Principal Mohr that school policy prevented the district from disclosing the students’ identities to protect against retaliation. Nothing in the record in today’s case indicates that the School Board had a policy providing for the right of cross-examination of all witnesses or disclosure of the students who provided statements to school officials. The dissent cites the current Hinds County School District Handbook as evidence that cross examination of witnesses in disciplinary procedures is School Board policy. Dissent at ¶ 57. The handbook cited by the dissent is that of the current school year, not the handbook from 2004 when this incident occurred. Moreover, this Court is limited to the briefs that were before the Court of Appeals and the record, and any portion of the Hinds County School District Handbook not previously cited therein cannot be reviewed by this Court. See Miss. R.App. P. 17(h). The dissent cites policy that falls outside the record; therefore, this Court will not consider the current Hinds County Handbook.
¶ 36. Furthermore, in the case of a drug offense, all school districts have a substantial interest in maintaining a safe, drug-free environment for their students. *401 To do so, it is important for schools to have the discretion to protect the identity of students who report drug crimes occurring on their campuses. We agree with the School Board that to hold otherwise would potentially endanger students by subjecting them to possible retaliation. Additionally, requiring school districts to identify students who report drug crimes on school campuses has the potential to create a chilling effect on how forthcoming students are with administrators for fear of being identified by those students possessing and distributing drugs at school. In its amicus brief, the ACLU argues that the third Mathews element, the School Board’s interest in protecting R.B.’s classmates from being identified or retaliated against, did not outweigh R.B.’s interest given that the record did not show R.B. to be a threat. Mathews, 424 U.S. at 335, 96 S.Ct. 893. However, a drug crime on campus is an egregious offense and is, in and of itself, a threat to the other students. Moreover, based on R.B.’s extensive discipline record and the previous charge of possession of a weapon, we do not find this argument persuasive.
¶ 37. Citing inconsistencies in the statements of R.B.’s classmates, the ACLU argues that the second Mathews factor, the risk of making an erroneous disciplinary decision, is significant enough to compel cross-examination in this case. Id. We do not find this argument persuasive given that the Appeals Committee had access to these statements, to R.B.’s statements made on his own behalf, and to the statements of the school administrators. Thus, as fact-finders, the Appeals Committee had ample opportunity to examine any inconsistencies and to assign the appropriate weight and credibility to those statements. We also agree with the Court of Appeals dissent that school boards do not have the statutory authority to compel students to testify against fellow students at evidentiary hearings. In addition, this is not a case in which the school district denied R.B. the right to call his own witnesses to speak in his defense. As stated in the Appeals Committee notice letter, if R.B. had at any time deemed there were students with information relevant to his defense, he could have produced those students for the purpose of giving a statement to the Appeals Committee.
¶ 38. As to the drug-possession charge, we find the procedures implemented by the School Board to be sufficient where R.B. (1) was apprised of the nature of the charges; (2) was given a list of potential witnesses; (3) was informed of his right to counsel; and (4) was given notice and opportunity to speak on his own behalf and to call any others with relevant information. In fact, as noted by Judge Roberts in his dissent,
Neither R.B. nor anyone on his behalf ever attempted to cross-examine any school employee witness who was present. Moreover, when asked, R.B. stated that he had no additional evidence or witnesses to present to the Appeals Committee. The Appeals Committee and the School Board considered a written report of the confiscation by two school employees, statements from students, and R.B.’s quasi confession. The marijuana was found right where R.B. said he laid it. Even if we assume that R.B. only hid the marijuana for another student, there was a significant amount of evidence that R.B. had dominion and control over marijuana in his possession. Finally, a chemical test revealed that it was, in fact, marijuana that was found.
Hinds Co. Sch. Dist. v. R.B., 10 So.3d 495, 513, ¶ 79, 2007 WL 2702819 (Miss.Ct.App.2007) (emphasis in original). From the record, R.B. unquestionably was afforded due process. However, even assuming ar- *402 guendo that R.B. was denied due process, he has failed to make a showing of substantial prejudice. R.B. gave a signed, written statement to Principal Mohr that, upon being alerted to the presence of police on campus, another student, J.D., threw him the bag of marijuana and asked him to hide it. In this statement, R.B. admitted to complying with this request when he tossed the bag onto a nearby bookshelf. R.B. did not refuse the marijuana, nor did he alert his teacher or the police to the presence of the marijuana. It is only when R.B. was questioned as a suspect in connection with the marijuana that R.B. implicated J.D. As noted by Judge Roberts in his dissent, even if the facts as stated by R.B. are accepted at face value, R.B. admitted to a brief possession and subsequent concealment of the bag of marijuana. Id. at 513, ¶ 79. This admission weighs heavily in favor of guilt and against the likelihood that R.B. could have suffered substantial prejudice as a result of the School Board’s disciplinary procedures.
¶ 39. In light of all the surrounding circumstances-the nature and severity of drug possession on campus, the number of students who implicated R.B., and R.B.’s own incriminating, signed statement — any school administrator sitting as a fact-finder could reasonably conclude that R.B. was guilty of the drug-possession offense. Although we recognize that this case involves a fundamental right to public education, after applying the Mathews factors, we cannot find any efficacy in added procedures, especially considering, the sufficiency of the evidence and the School Board’s overwhelming interest in ensuring the safety of its students. Mathews, 424 U.S. at 335, 96 S.Ct. 893. Therefore, even though we have found that R.B. was not denied due process, in addressing the alternative argument that, assuming arguen-do that R.B. was denied due process, R.B. has failed to make a requisite showing that he was substantially prejudiced by not being given a second evidentiary hearing at the June 10, 2004, School Board meeting, or by not being provided a list of student witnesses or the opportunity to cross-examine his fellow students at the Appeals Committee or School Board meetings. Therefore, the decision of the School Board to expel R.B. for possession of marijuana was supported by substantial evidence and was not arbitrary or capricious. Thus, we likewise find that as to this issue, the School Board’s decision is beyond an appellate court’s authority to disturb on appeal.
III. WHETHER MISSISSIPPI CODE ANNOTATED SECTION 37-7-301(e) REQUIRES SCHOOL BOARDS TO CONDUCT THEIR OWN PHYSICAL EXAMINATION OF CONTRABAND PRIOR TO RENDERING DECISIONS.
¶ 40. The School Board argues that the Court of Appeals plurality opinion misinterpreted Mississippi Code Annotated Section 37-7-301 (e) when the plurality opined that the School Board improperly delegated to its superintendent the decision as to whether the instrument in question was a weapon. The School Board further contends that there is no precedent requiring school boards to physically examine contraband before rendering a decision.
¶ 41. Mississippi Code Annotated Section 37-7-301(e) states in pertinent part:
The school boards of all school districts shall have the following powers, authority and duties in addition to all others imposed or granted by law, to wit:
[[Image here]]
(e) To suspend or to expel a pupil or to change the placement of a pupil to the *403 school district’s alternative school or homebound program for mis-conduet in the school or on school property ... when such conduct by a pupil, in the determination of the school superintendent or principal, renders that pupil’s presence in the classroom a disruption to the educational environment of the school or a detriment to the best interest and welfare of the pupils and teacher of such class as a whole, and to delegate such authority to the appropriate officials of the district.
Miss.Code Ann. § 37-7-301(e) (Rev.2007).
¶ 42. Once again, Judge Roberts is correct when he states in his dissent that a plain reading of the statute authorizes school boards to delegate disciplinary and placement decisions to other school administrators, so long as school boards make the final determination. Hinds County Sch. Dist. v. R.B., 10 So.3d 495, 508, ¶ 58 (Miss.Ct.App.2007). Judge Roberts was correct in his assertion that the School Board merely delegated authority to the superintendent in making a determination as to whether the instrument in question constituted a weapon that violated school policy and state law, but the School Board itself made the ultimate determination regarding the expulsion. Id. In addition to the superintendent’s determination, the School Board members also viewed the instrument D.L.B. presented them (an instrument he described as identical to the one confiscated from R.B.), heard statements from D.L.B., and received statements from Principal Campbell and the school resource officer describing the instrument as a weapon.
¶ 43. As Judge Roberts’s dissent points out, school boards often do not have access to contraband for the purpose of inspection. Contraband, such as a weapon or drugs, is often necessarily and properly confiscated by police. It is quite frequently necessary for school boards to delegate such inspections to school resource officers, principals, or other school officials. Mississippi Code Annotated Section 37-7-301(e) -grants school boards the power to suspend and expel “when such conduct by a pupil, in the determination of the school superintendent or principal, renders that pupil’s presence in the classroom a disruption” or “a detriment to the best interest and welfare of the pupils.” Miss.Code Ann. § 37-7-301(e) (Rev.2007) (emphasis added). Further, the statute provides for delegation of the power to suspend or expel to “the appropriate officials of the district.” A plain reading of this language leads to the conclusion that school boards are acting within them statutory authority to delegate such findings of fact in disciplinary matters. Therefore, we respectfully disagree with the Court of Appeals plurality that the School Board abdicated its authority pursuant to Mississippi Code Annotated Section 97-37-17, when its members delegated authority to the superintendent to make a determination as to whether the seized instrument was a weapon. Where school boards make final determinations regarding suspensions and expulsions, even in cases where school administrators have submitted findings of fact to those school boards, those determinations are not per se arbitrary and capricious.
CONCLUSION
¶ 44. For the reasons stated, the judgments of the Court of Appeals and the Hinds County Chancery Court are reversed and the Hinds County School District Board of Trustees’ expulsion of R.B. is reinstated.
¶ 45. THE JUDGMENTS OF THE COURT OF APPEALS AND THE CHANCERY COURT FOR THE FIRST JUDICIAL DISTRICT OF HINDS *404 COUNTY ARE REVERSED AND THE HINDS COUNTY SCHOOL DISTRICT BOARD OF TRUSTEES’ EXPULSION OF R.B. IS REINSTATED.
SMITH, C.J., WALLER, P.J., RANDOLPH AND LAMAR, JJ., CONCUR. DICKINSON, J., CONCURS IN PART. GRAVES, J, DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J., AND EASLEY, J. DICKINSON, J., JOINS IN PART.

. The ACLU's motion for leave to file amicus brief did not go uncontested by the School Board, which filed its Response to Motion for Leave to File Brief of Amicus Curiae. The ACLU thereafter filed its Supplemental Brief in Support of Motion For Leave to File Brief of Amicus Curiae, and the School Board then filed its Response to ACLU's Supplemental Brief in Support of Motion for Leave to File Brief of Amicus Curiae. In due course, this Court granted the ACLU's motion for leave to file amicus brief and the ACLU filed its ami-cus brief pursuant to this Court’s order.

. Almost all of the facts are gleaned from the trial court's opinion.

.Mississippi Code Annotated Section 97-37-17(4) (Rev.2006) reads as follows:
It shall be a misdemeanor for any person to possess or carry, whether openly or concealed, any BB gun, air rifle, air pistol, bowie knife, dirk, dagger, slingshot, leaded cane, switchblade knife, blackjack, metallic knuckles, razors and razor blades (except solely for personal shaving), and any sharp-pointed or edged instrument except instructional supplies, unaltered nail files and clips and tools used solely for preparation of food, instruction and maintenance on educational property. Any person violating this subsection shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than One Thousand Dol *391 lars ($1,000.00), or be imprisoned not exceeding six (6) months, or both.

.There is some dispute by the parties in their statements as to whether Principal Campbell requested this additional search involving the removal of R.B.’s clothing, or whether Principal Campbell had summoned D.L.B. to assist with the search because R.B. was the one who wished to remove his clothing for a more invasive search.

. D.L.B. testified that Mr. Campbell had given him the choice to either consent to a more invasive search of R.B. (including removal of his underwear); or, in the alternative, Principal Campbell would have R.B. arrested for possession of a weapon.

. The Appeals Committee is made up of three members and a hearing officer, who conducts the proceedings.

. In viewing the letter to D.L.B. dated June 11, 2004, we note that the language implies that notice of the School Board hearing was given. The letter opens, "As you were notified, the Hinds County School Board met in regular session at 5 P.M. on Thursday, June 10, 2004.”

. Throughout Hinds County’s Petition for Certiorari, the Appellants refer to the Court of Appeals majority. Since the decision was a five-five split, our discussion references the Court of Appeals plurality.

. The ACLU cites Board of Trustees of Pascagoula Municipal Separate School District v. T.H., 681 So.2d 110, 114 (Miss.1996).