# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CC-01034-COA

**CLC OF BILOXI, LLC D/B/A BILOXI**                             **APPELLANT**
**COMMUNITY LIVING CENTER**

**v.**

**MISSISSIPPI DIVISION OF MEDICAID AND**               **APPELLEES**
**DAVID J. DZIELAK, IN HIS OFFICIAL**
**CAPACITY AS EXECUTIVE DIRECTOR OF**
**THE DIVISION OF MEDICAID**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/21/2016 |
| TRIAL JUDGE: | HON. PATRICIA D. WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | JAMES RAY MOZINGO LYDIA QUARLES HORACE HUNTER TWIFORD IV |
| ATTORNEYS FOR APPELLEES: | JANET MCMURTRAY LAURA L. GIBBES |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED: 02/13/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1. CLC Biloxi sought a per diem reimbursement from the Mississippi Division of Medicaid (DOM) for their respiratory-therapist expenses. The DOM denied CLC Biloxi's request. After an administrative hearing, the DOM executive director affirmed the DOM. CLC Biloxi then appealed to Hinds County Chancery Court, which also affirmed the DOM. Finally, CLC appealed to this Court. After review, we find the DOM's decision to deny CLC

reimbursement for respiratory-therapist expenses on a per diem basis was supported by substantial evidence. Accordingly, we affirm.

## FACTS

¶2. CLC Biloxi is a long-term skilled nursing facility that entered into a contract with the DOM to provide nursing-home services to Mississippi residents. In turn, the costs of the services provided by CLC Biloxi were reimbursed by the DOM in two ways: (1) as an expense could be billed directly to Medicaid for reimbursement of a specific service; and (2) CLC Biloxi could file an annual cost report with the DOM, which could include certain allowable costs or services that have been incurred to provide reasonable care to Medicaid patients; the cost report would be used to calculate a per diem cost of care for Medicaid patients.

¶3. Among the numerous services CLC Biloxi provided to Medicaid patients, respiratory therapy was utilized to treat nursing-home patients who suffered from a pulmonary illness. Although most respiratory-therapy services could be treated by a regular nursing staff, CLC Biloxi employed "respiratory therapists" to provide certain respiratory treatments to patients.[1]

¶4. On May 29, 2009, CLC Biloxi filed its annual cost report for allowable expenses incurred during 2008. It listed its respiratory therapists' salaries on Form 6, Line 2, under therapy expenses. In response to CLC Biloxi's original 2008 cost report, the DOM

---

[1] Specifically, CLC Biloxi utilized respiratory therapists to assist in the treatment of patients who had undergone tracheotomies.

2

performed a "desk review," to ensure that necessary adjustments were made before the DOM reimbursed CLC Biloxi for services rendered. Upon review of the cost report, the DOM determined not to reimburse CLC Biloxi for the respiratory-therapist salaries once it calculated the appropriate per diem to be provided. On August 2, 2010, CLC Biloxi filed an amended cost report with the DOM. Unlike the original 2008 cost report, CLC Biloxi sought reimbursement for the respiratory-therapist salaries as a direct care expense on Form 6, Line 1. In contrast to the initial desk review of the original 2008 CLC Biloxi cost reports, the first amended desk review handed down by the DOM on January 12, 2011, allowed the respiratory therapists' salaries to be used to calculate CLC Biloxi's per diem. Accordingly, approximately $82,000 in salaries for respiratory therapists was included in CLC's per diem calculation.[2]

¶5. Upon discovery of the improper classification made by CLC Biloxi, the DOM issued a second amended desk review on March 2, 2012. Consequently, the DOM removed the respiratory-therapist salaries from CLC Biloxi's per diem calculation, as was done in the original desk review. As a result, the DOM sought to recoup the $82,000 that had been paid to CLC Biloxi for the inclusion of respiratory-therapist salaries in their per diem rates.

¶6. In response, on March 30, 2012, CLC Biloxi requested an administrative appeal of the

---

[2] It should be noted, however, that the DOM's first amended desk review explicitly stated, "[y]our cost report is subject to additional adjustments brought to the attention of the [DOM] and may be selected for field review, which could result in changes and additional adjustments." Therefore, the DOM made it clear to CLC Biloxi that the per diem rate could be adjusted at any given time.

adjustments handed down by the DOM in the second amended desk review. Less than a month later, the DOM denied the appeal. Upon denial of the appeal, CLC Biloxi requested an administrative hearing. Following the hearing, the hearing officer recommended and the DOM executive director affirmed the DOM's disallowance of the respiratory therapists' salaries as part of CLC Biloxi's per diem calculation.

¶7. On October 23, 2013, CLC Biloxi filed a complaint in the Hinds County Chancery Court seeking declaratory and injunctive relief to prevent the DOM from breaching its contract with CLC Biloxi and from adopting what CLC Biloxi believed to be "an arbitrary and capricious interpretation of its controlling regulations." The DOM then filed a motion to dismiss the complaint and challenged the chancery court's jurisdiction to hear administrative appeals from the DOM. The case was stayed pending the outcome of the interlocutory appeal in *Mississippi Division of Medicaid v. Alliance Health Center*, 174 So. 3d 254, 263 (¶26) (Miss. 2015), in which the Mississippi Supreme Court affirmed the jurisdiction of the chancery court over appeals from the DOM.

¶8. On March 29, 2016, the chancery court heard oral arguments on the dispute. Ultimately, on June 21, 2016, the court affirmed the DOM's final decision and held that the language found in the State Medicaid Plan (State Plan), its policy provider manual, and cost report "does not include respiratory therapists within those categories of therapists that are allowed to enroll as Medicaid providers and thus receive direct reimbursement for their services." Further, the court found that CLC Biloxi did not fall within the categories of

4

medical facilities that are allowed a per diem reimbursement for respiratory therapists' salaries.[3]

¶9.  CLC Biloxi filed the instant appeal.

## STANDARD OF REVIEW

¶10.  We will reverse the decision of an administrative agency only if the decision (1) was unsupported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the power of the administrative agency to make; or (4) violated the complaining party's statutory or constitutional right. *Hinds Cty. Sch. Dist. Bd. of Trs. v. R.B. ex rel. D.L.B.*, 10 So. 3d 387, 394-95 (¶17) (Miss. 2008).  An agency may not adopt rules and regulations that are contrary to statutory provisions, or that exceed or conflict with the authority granted by statute. *Miss. Pub. Serv. Comm'n v. Miss. Power & Light Co.*, 593 So. 2d 997, 1000, 1004 (Miss. 1991).

¶11.  "An agency's interpretation of a rule or statute governing the agency's operation is a matter of law that is reviewed de novo, but with great deference to the agency's interpretation." *Buffington v. Miss. State Tax Comm'n*, 43 So. 3d 450, 454 (¶12) (Miss. 2010).  This "duty of deference derives from our realization that the everyday experience of the administrative agency gives it familiarity with the particularities and nuances of the

---

[3] The court held that under the controlling State Plan, only three types of facilities are entitled to reimbursement of therapy expenses as part of their per diem calculation: private nursing facilities for the severely disabled (NFSD); psychiatric residential treatment facilities (PRTF); and intermediate care facilities for the intellectually challenged (ICF/IID).  Since CLC Biloxi was classified as a large nursing facility (LNF), the court found that it was not entitled to claim respiratory-therapy expenses as part of its per diem calculation.

problems committed to its care which no court can hope to replicate." *Gill v. Miss. Dep't of Wildlife Conservation*, 574 So. 2d 586, 593 (Miss. 1990). An agency's interpretation will not be upheld if "it is so plainly erroneous or so inconsistent with either the underlying regulation or statute as to be arbitrary, capricious, an abuse of discretion[,] or otherwise not in accordance with law." *Buelow v. Glidewell*, 757 So. 2d 216, 219 (¶10) (Miss. 2000).

## DISCUSSION

¶12. Mississippi Code Annotated section 43-13-117(A) (Rev. 2015) requires the DOM to "include payment of part or all of the costs . . . of the following types of care and services rendered to eligible applicants who have been determined to be eligible for that care and services, within the limits of state appropriations and federal matching funds." Section 43-13-117(A)(4)(a)-(f) specifies the required assistance and payment methods for nursing facility services. Miss. Code Ann. 43-13-117(A)(4). Mississippi Code Annotated section 43-13-121(1) (Rev. 2015) grants the DOM the following administrative authority over the Medicaid program:

> (1) The division shall administer the Medicaid program under the provisions of this article, and may do the following:
>
>> (a) Adopt and promulgate reasonable rules, regulations and standards, with approval of the Governor, and in accordance with the Administrative Procedures Law, Section 25-43-1.101 et seq.:
>>
>>> (i) Establishing methods and procedures as may be necessary for the proper and efficient administration of this article;
>>>
>>> (ii) Providing Medicaid to all qualified recipients under the provisions of this article as the division may determine and

6

within the limits of appropriated funds;

(iii) Establishing reasonable fees, charges and rates for medical services and drugs; in doing so, the division shall fix all of those fees, charges and rates at the minimum levels absolutely necessary to provide the medical assistance authorized by this article, and shall not change any of those fees, charges or rates except as may be authorized in [s]ection 43-13-117 . . . .

## 1.    Denial of Reimbursement

¶13.   To fully understand both CLC Biloxi and the DOM's arguments, it is important to examine all relevant portions of the State Plan, policy provider manual, and cost-report instructions. The State Plan is promulgated and administered by the DOM.   It is then approved by the Mississippi attorney general and the governor, and ultimately checked for compliance with federal Medicaid regulations by the federal Centers for Medicare and Medicaid. Any proposed changes or adoptions must be approved by the same respective parties.

¶14.   Attachment 4.19-D of the State Plan provides guidelines for the reimbursement for medical-assistance beneficiaries of long-term care facilities:

A facility's direct care costs, therapy costs, care related costs, administrative and operating costs and property costs related to covered services will be considered in the findings and allocation of costs to the Medical Assistance Program for its eligible recipients.  Costs included in the per diem rate will be those necessary to be incurred by efficiently and economically operated nursing facilities that comply with all requirements of participation in the Medicaid program with the exception of services provided that are reimbursed on a fee for service basis or as a direct payment outside of the per diem rate.

CLC Biloxi originally filed its cost report by reporting its respiratory-therapist salaries under

Section 2 Therapy Expenses on Form 6, Line 2, as provided in Attachment 4.19-D, Section A(18):

> Costs attributable to the administering of therapy services should be reported on Form 6, Line 2. Therapy expenses will be included in the per diem rate for NFSD, PRTF and ICF/IID providers. Therapy expenses for Small Nursing Facilities and Large Nursing Facilities will be reimbursed on a fee for service basis.

The cost-report instructions for including therapy expenses are specified in Form 6:

> Line 2 Therapy Expense Costs attributable to the administering of therapy services must be included in Section 2, Lines 2-01 through 2-16 . . . .
>
> Line 2-01, Salaries - Occupational Therapists[:] Gross salaries of occupational therapists
>
> Line 2-02, Salaries - Physical Therapists[:] Gross salaries of physical therapists
>
> Line 2-03, Salaries - Speech Therapists[:] Gross salaries of speech therapists
>
> Line 2-04, Salaries - **Other Therapists[:] Gross salaries of therapists other than occupational therapists, physical therapists and speech therapists, including but not limited to, respiratory therapists** . . . .

(Emphasis added).

¶15. Under Section A(18), only three types of facilities, all of which are high acuity facilities, are allowed to claim respiratory-therapy expenses as part of their per diem calculation: (1) NFSD: private nursing facility for the severely disabled; (2) PRTF: psychiatric residential treatment facility; and (3) ICF/IID: intermediate care facility for the intellectually challenged. CLC Biloxi, as a large nursing facility, does not qualify for per diem reimbursement. Rather, Section (A)(18) states that "[t]herapy expenses for [s]mall

8

[n]ursing [f]acilities and [l]arge [n]ursing [f]acilities will be reimbursed on a fee for service basis."

¶16. CLC Biloxi originally placed the respiratory-therapist salaries on Form 6, Line 2, as required in Section (A)(18). The DOM claims it denied reimbursement because respiratory therapy is not reimbursable on a fee-for-service basis for respiratory therapists working in small and large nursing facilities. The DOM explains that, although respiratory therapy in small and large nursing facilities is "allowable," it is not "coverable" because Section 50.02 of the policy provider manual specifically states that DOM "does not enroll respiratory therapist[s] as eligible providers and does not directly reimburse respiratory therapists for services provided to Medicaid beneficiaries." In other words, since respiratory therapists cannot be "providers," their salaries cannot be covered on a fee-for-service basis.

¶17. After the DOM denied reimbursement for the salaries on Form 6, Line 2, CLC Biloxi did not appeal. Instead, it amended its cost report to include its respiratory-therapist salaries under Section 1, Direct Care Expenses, on Form 6, Line 1-01: "Salaries - Aides[,] Gross salary of certified nurse aids and nurse aides in training." CLC Biloxi claims this was proper because respiratory therapists are not actually "therapists" for purposes of the State Plan, but instead are "salaried direct care staff" under Attachment 4.19-D Chapter 2, Section A(15) of the State Plan:

> 15. Salaries and Fringe Benefits. Allowable costs include payments for salaries and fringe benefits for those employees who provide services in the normal conduct of operations related to patient care. These employees include, but are not limited to, registered nurses, licensed practical nurses, nurses aides,

9

other **salaried direct care staff**, director of nursing, dietary employees, housekeeping employees, maintenance staff, laundry employees, activities staff, pharmacy employees, social workers, medical records staff, non-owner administrator, non-owner assistant administrator, accountants and bookkeepers and other clerical and secretarial staff.

(Emphasis added).

¶18. To support its argument, CLC Biloxi cites the Mississippi Respiratory Care Practice Act (MRCPA), Mississippi Code Annotated section 73-57-5(e) (Rev. 2017), which states that the "[p]ractice of respiratory care shall include, but not be limited to: direct and indirect respiratory care services . . . ." However, CLC Biloxi disregards that 42 U.S.C. § 1396a (e)(9)(C) (2017), the federal statute governing state plans for medical assistance, refers to respiratory therapists as "therapists." Further, the MRCPA itself refers to persons who practice respiratory care as therapists:

> An applicant for a license to practice respiratory care shall submit to the board written evidence, verified by oath, that the applicant holds a credential, conferred by the National Board of Respiratory Care, as a Certified Respiratory Technician (CRT) and/or as a **Registered Respiratory Therapist (RRT)**, or their successor credentials, providing such credential has not been suspended or revoked, or at the time of application has not lapsed.

Miss. Code Ann. § 73-57-17(1) (Rev. 2017) (emphasis added). DOM's determination of how to allocate funding is entirely within its discretion. Based on our reading of the statutes listed above, we agree with the DOM that respiratory therapists are "therapists" for purposes of the State Plan. We also agree that Section (A)(18) requires small and large nursing facilities to report respiratory-therapy expenses on Form 6, Line 2.

¶19. The DOM has no statutory requirement to provide funds for respiratory therapy.

10

Nevertheless, it chooses to provide funding for respiratory services on a per diem basis for three different types of long-term care facilities – private nursing facilities for the severely disabled (NFSD); psychiatric residential treatment facilities (PRTF); and intermediate care facilities for the intellectually challenged (ICF/IID). As a large nursing facility, CLC Biloxi does not fall into any of those categories. Nor do respiratory therapists fall into the category of salaried direct-care staff in Attachment 4.19-D Chapter 2, Section A(15). Accordingly, we affirm the DOM's finding that CLC Biloxi was not allowed to place its respiratory therapists' salaries on Line 1-01 of the cost report.

## 2. Freedom of Choice

¶20. CLC Biloxi next argues that the DOM's prohibition of respiratory therapists in small and large nursing facilities, but approval of the same in hospitals and higher acuity nursing facilities, violates the "freedom of choice" provision in Mississippi Code Annotated section 43-13-5 (Rev. 2015). Section 43-13-5 addresses medical assistance for the aged and provides that "no regulation shall be promulgated [that] limits or abridges the recipient's free choice of the provider of medical and remedial care or service." As the DOM points out, the term "[m]edical assistance for the aged" is defined to mean "payment of *part* or all of the cost" of a specifically defined scope of care and services, as set forth in the statute. Miss. Code Ann. § 43-13-3(1)(a)-(l) (Rev. 2015) (emphasis added).

¶21. Contrary to CLC's contention, section 43-13-5 is not so broad to imply that the DOM's decision to limit payment for respiratory therapy limits a recipient's freedom of

11

choice. As previously stated, the DOM has no statutory requirement, through 42 U.S.C. § 1396a (e)(9)(C) (2017) or section 43, to provide funding for respiratory therapy. Even so, the DOM does provide funding for respiratory therapy in some facilities; although small and large nursing facilities are not included, those patients have the choice to seek respiratory care at a hospital, where respiratory-therapy expenses are included for inpatient hospital reimbursement. *See* State Plan Attachment 4.19-A.

### 3. Due Process

¶22. Finally, CLC Biloxi asserts that its due-process rights have been violated because the DOM is allowed to recoup the $82,000 in respiratory-therapist salaries that CLC Biloxi was erroneously paid. Both the United States and Mississippi Constitutions guarantee a right to due process before an administrative agency. *See* U.S. Const. amend XIV § 1; Miss. Const. art. 3, § 14. Administrative proceedings are to be "conducted in a fair and impartial manner, free from any just suspicion or prejudice, unfairness, fraud, or oppression." *Miss. State Bd. of Health v. Johnson*, 197 Miss. 417, 417, 19 So. 2d 445, 447 (1944). The minimum procedural due-process requirements an administrative board must afford parties are notice and an opportunity to be heard. *Booth v. Miss. Emp't Sec. Comm'n*, 588 So. 2d 422, 428 (Miss. 1991). Here, CLC Biloxi has been afforded all the due-process protections provided by the DOM's administrative process and has availed itself of the appeals afforded by both the chancery court and this Court. Accordingly, we find no due-process violation has occurred.

¶23.   **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**